912 N.E.2d 337 (2009)
In re M.R., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Gina Hampton, Respondent-Appellant).
No. 4-09-0110.
Appellate Court of Illinois, Fourth District.
July 20, 2009.
*340 Presiding Justice McCULLOUGH delivered the opinion of the court:
Respondent, Gina Hampton, appeals the trial court's order terminating her parental rights to her child, M.R. (born October 16, 1997). She argues (1) the court's determination that she was unfit was against the manifest weight of the evidence; (2) her constitutional rights were violated when the involved agency informed M.R. there was little chance of her being returned to respondent's care; (3) the court erred by permitting a supplemental motion to terminate her parental rights to proceed to a second best-interest hearing without a hearing to readjudicate her fitness; (4) the court's best-interest determination was against the manifest weight of the evidence; (5) the court erred by denying her motion for an independent medical evaluation of M.R.; and (6) the court abused its discretion by denying her motion to continue, reopen evidence, and admit evidence of her medical records. We affirm.
In November 2004, M.R. came to the attention of the Department of Children and Family Services (DCFS) after respondent, a recovering drug addict, relapsed and left M.R., then seven years old, at an alcoholics anonymous (AA) dance. On November 22, 2004, the State filed a petition for adjudication of wardship, alleging M.R. (1) did not receive the proper care necessary for her well-being, in that respondent failed to make a proper care plan for M.R. and (2) was neglected in that she did not receive the proper care necessary for her well-being due to respondent's drug and alcohol use.
On February 24, 2005, the trial court adjudicated M.R. neglected. On March 24, 2005, its dispositional order was entered, removing custody and guardianship of M.R. from respondent and M.R.'s father and placing it with DCFS. (The parental rights of M.R.'s father have also been terminated. However, he is not a party to this appeal and we will discuss the issues only as they relate to respondent.)
On November 23, 2005, M.R. was returned to respondent but was removed again approximately one month later. The record shows respondent left M.R. with a former foster parent, stating she would return after running some errands. Respondent, however, relapsed and failed to return. DCFS was contacted. On February 2, 2006, the trial court entered a second dispositional order, adjudicating M.R. a ward of the court and placing custody and guardianship with DCFS.
On January 4, 2007, the State filed a motion to terminate respondent's parental rights. It alleged respondent was unfit because she failed to (1) maintain a reasonable degree of interest, concern, or responsibility as to M.R.'s welfare; (2) make reasonable efforts to correct the conditions which were the basis for M.R.'s removal; (3) make reasonable progress toward M.R.'s return within nine months after the neglect adjudication, specifically February *341 24 through November 24, 2005; and (4) make reasonable progress toward M.R.'s return during any nine-month period following the neglect adjudication, specifically November 24, 2005, through August 24, 2006. The State also alleged it was in M.R.'s best interests to terminate respondent's parental rights. On May 18, 2007, following a hearing, the trial court found respondent unfit. In a later order, the court stated it found the State proved each unfitness allegation in its motion by clear and convincing evidence.
On June 26 and July 3, 2007, the trial court conducted a best-interest hearing. Following the hearing, it determined termination of respondent's parental rights was not in M.R.'s best interest. The court noted M.R. had recently been placed in a new foster home. It stated that while her new foster home might be what she needed, it was premature to take the permanent step of terminating respondent's parental rights. M.R.'s custody and guardianship remained with DCFS.
On February 5, 2008, the State filed a supplemental motion for termination of parental rights. It noted the court's previous finding of unfitness and its decision that termination was not in M.R.'s best interests. The State then alleged "circumstances had changed providing new information for another best[-]interests hearing." Also, it alleged termination was in M.R.'s best interests. Both parties filed memoranda addressing whether the matter could proceed with a second best-interest hearing without redetermining whether respondent was unfit. On July 28, 2008, the trial court conducted a hearing on the matter. After hearing the parties' arguments, the court determined it was unnecessary to relitigate the issue of respondent's fitness and the case could proceed on the State's motion for a second bestinterest hearing.
On November 20, 2008, the trial court conducted a best-interest hearing. Respondent did not appear but was represented by counsel. The court noted she had "not been present for a number of * * * past hearings." Respondent's counsel requested a continuance due to her absence, acknowledging that she was aware of the hearing and he could not explain her failure to appear. The State and guardian ad litem both objected, with the State noting that the last time respondent appeared in court was July 24, 2007. The court denied the motion, stating the last time it granted a continuance it noted on its order that no further continuances would be allowed. It also stated that respondent had not "been showing any interest in any court proceedings for a very, very long time."
The matter then proceeded with the best-interest hearing. After hearing the evidence and the parties' arguments, the trial court found it was in M.R.'s best interests to terminate respondent's parental rights. On December 10, 2008, respondent filed a motion for rehearing, retrial, or modification of the judgment, to vacate the judgment, or for other relief. On December 15, 2008, respondent filed a motion to reopen evidence and for leave to file medical records, alleging she failed to attend the best-interest hearing and present evidence due to a medical condition. On February 4, 2009, the trial court denied both motions.
This appeal followed.
On appeal, respondent first argues the trial court's determination that she was unfit was against the manifest weight of the evidence.
Parental rights may be involuntarily terminated where (1) the State proves, by clear and convincing evidence, that a parent is unfit pursuant to grounds *342 set forth section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2006)) and (2) the trial court finds that termination is in the child's best interests. In re Donald A.G., 221 Ill.2d 234, 244, 302 Ill.Dec. 735, 850 N.E.2d 172, 177 (2006). "[T]he State is not required to prove every ground it has alleged for finding a parent unfit." In re Gwynne P., 215 Ill.2d 340, 349, 294 Ill.Dec. 96, 830 N.E.2d 508, 514 (2005). "A parent's rights may be terminated if even a single alleged ground for unfitness is supported by clear and convincing evidence." Gwynne P., 215 Ill.2d at 349, 294 Ill.Dec. 96, 830 N.E.2d at 514.
On review, the trial court's fitness determination will not be disturbed unless it is against the manifest weight of the evidence. Gwynne P., 215 Ill.2d at 354, 294 Ill.Dec. 96, 830 N.E.2d at 516-17. "A court's decision * * * is against the manifest weight of the evidence only where the opposite conclusion is clearly apparent." Gwynne P., 215 Ill.2d at 354, 294 Ill.Dec. 96, 830 N.E.2d at 517.
Pursuant to the Adoption Act, a parent is unfit if he or she failed "to make reasonable progress toward the return of the child to the parent during any [nine]-month period after the end of the initial [nine]-month period following the adjudication of neglected or abused minor." 750 ILCS 50/1(D)(m)(iii) (West 2006). Here, the State alleged respondent was an unfit parent because she failed to make reasonable progress toward M.R.'s return during any nine-month period following the neglect adjudication, specifically November 24, 2005, through August 24, 2006.
At the fitness hearing, evidence showed M.R. was returned to respondent in November 2005 but removed again in December 2005, after respondent relapsed and left M.R. in the care of M.R.'s former foster parent. Lori Rakers, a caseworker for Lutheran Child and Family Services (LCFS), testified that from December 2005 to June 2006, respondent was uncooperative and not following through with services. She noted respondent canceled several appointments for an assessment at the Triangle Center before finally completing an assessment in June 2006. Also, in counseling, respondent refused to address the reasons behind why she left M.R. in December 2005. Further, in January 2007, respondent's phone calls with M.R. were discontinued after she violated LCFS rules by permitting M.R. to speak with someone other than respondent during telephone calls.
The evidence presented shows respondent failed to comply with services or address issues related to the reasons why M.R. was removed from her care. During the relevant time period, respondent even repeated the actions that initially brought M.R. to the attention of DCFS. We find the evidence was sufficient to show respondent failed to make reasonable progress toward M.R.'s return from November 2005 to August 2006. The trial court's finding that respondent was unfit as alleged in the State's motion to terminate was not against the manifest weight of the evidence.
Respondent also contends her constitutional rights were violated when LCFS workers informed M.R. that the chance of her returning to her mother's care was not very high. She cites In re O.S., 364 Ill.App.3d 628, 302 Ill.Dec. 130, 848 N.E.2d 130 (2006), to support her argument. In that case, O.S. was removed from the respondent mother's custody at a young age and placed in foster care. O.S., 364 Ill.App.3d at 630, 302 Ill.Dec. 130, 848 N.E.2d at 132. While O.S. was in foster care, the respondent spent two years in prison and was prohibited from having any visits with O.S. during that time. O.S., 364 *343 Ill.App.3d at 630-32, 302 Ill.Dec. 130, 848 N.E.2d at 132-33. Visitation resumed after the respondent's release but O.S. was not allowed to know that the respondent was his mother and was required to refer to her as "Jenny." O.S., 364 Ill.App.3d at 632, 302 Ill.Dec. 130, 848 N.E.2d at 133-34.
A bonding assessment presented at the best-interests hearing showed that O.S.'s relationship with the respondent "was akin to that of a child to an aunt" and his primary attachment was to his foster parents. O.S., 364 Ill.App.3d at 633, 302 Ill. Dec. 130, 848 N.E.2d at 134. Ultimately the respondent's parental rights were terminated and she appealed, arguing that decisions made regarding visitation with O.S. "predetermined" the outcome of the case. O.S., 364 Ill.App.3d at 633, 302 Ill. Dec. 130, 848 N.E.2d at 134.
The Third District agreed with the respondent, concluding that the created fiction that the respondent was not O.S.'s mother "actively impeded the development of any parental bonding between [the] respondent and [O.S.] and frustrated one of the goals the legislature set in the [Juvenile Court Act of 1987(Act) (705 ILCS 405/1-1 through 7-1 (West 2006))]." O.S., 364 Ill.App.3d at 636, 302 Ill.Dec. 130, 848 N.E.2d at 136. It also found that at a best-interests hearing "a major component of the court's function is to assess the relative degree to which the child has bonded to his foster parents and his biological parent, taking into consideration the natural harm to the relationship caused by the parent's derelictions." O.S., 364 Ill.App.3d at 637, 302 Ill.Dec. 130, 848 N.E.2d at 137. However, any harm to the parent/child relationship "must be assessed absent artificial or coercive intervention of others into the bonding process." O.S., 364 Ill.App.3d at 637, 302 Ill.Dec. 130, 848 N.E.2d at 137. Because such an assessment could not be made in the case of O.S. and the respondent, the court concluded there had been a fundamental injustice to the respondent. O.S., 364 Ill.App.3d at 637, 302 Ill.Dec. 130, 848 N.E.2d at 137.
This case is distinguishable from O.S. Evidence of a bond or lack thereof between parent and child is relevant to the trial court's best-interest determination. Here, respondent presents this argument in the portion of her brief addressing the court's fitness determination. Further, evidence that LCFS informed M.R. that her chances of returning to respondent were not high was presented at the initial best-interest hearing. At the conclusion of that hearing, the court found it was not in M.R.'s best interests to terminate respondent's parental rights. In reaching its decision, the court noted that there was "a very strong bond" between respondent and M.R. Finally, the statements to M.R. by LCFS workers in this case did not rise to the level of what occurred in O.S.
The bond between respondent and M.R. was deemed strong and was not affected by actions of LCFS caseworkers. Respondent suffered no constitutional violation.
On appeal respondent next argues the trial court erred by permitting the State to proceed with a second best-interests hearing without redetermining whether she was unfit.
The Act provides that "after finding, based upon clear and convincing evidence, that a parent is an unfit person as defined in * * * the Adoption Act," a trial court may terminate parental rights where termination is in the minor's best interest. 705 ILCS 405/2-29(2) (West 2006). Termination proceedings may be initiated by the filing of a petition or motion "at any time after the entry of a dispositional order." 705 ILCS 405/2-13(4) (West 2006). Further, the Act provides for the filing of "one *344 or more motions in the best interests of the minor." 705 ILCS 405/2-13(6) (West 2006).
In proceedings to determine whether a parent is unfit, the trial court considers the parent's conduct. In re Tashika F., 333 Ill.App.3d 165, 169, 266 Ill. Dec. 742, 775 N.E.2d 304, 307 (2002). During the best-interest portion of termination proceedings, it considers the child's interests. Tashika F., 333 Ill.App.3d at 170, 266 Ill.Dec. 742, 775 N.E.2d at 307. To ensure proper focus on those interests, separate hearings and determinations are required. In re A.P., 277 Ill.App.3d 592, 600, 214 Ill.Dec. 299, 660 N.E.2d 1006, 1012 (1996).
In In re A.H., 207 Ill.2d 590, 594, 280 Ill.Dec. 290, 802 N.E.2d 215, 217 (2003), the supreme court found that "the Act contemplates the filing of more than one petition to terminate parental rights." Further, it found that an order denying a petition to terminate parental rights was not a final order since it does not end the parties' litigation and the possibility existed that parental rights could be terminated in the future. A.H., 207 Ill.2d at 594, 280 Ill.Dec. 290, 802 N.E.2d at 218.
As stated, the issue on appeal is whether parental fitness must be redetermined where a subsequent motion to terminate parental rights is filed or whether the matter may proceed directly to the best-interest portion of proceedings. The parties do not cite, nor can we find, any case that addresses this precise issue. However, the State relies on In re S.B., 305 Ill. App.3d 813, 239 Ill.Dec. 219, 713 N.E.2d 750 (1999), which is instructive. In that case, as in the case at bar, the respondent mother was found unfit but the trial court concluded termination was not in her child's best interests. S.B., 305 Ill.App.3d at 815, 239 Ill.Dec. 219, 713 N.E.2d at 751. Later, an oral motion was made for a new best-interest hearing, which the trial court conducted. S.B., 305 Ill.App.3d at 815-16, 239 Ill.Dec. 219, 713 N.E.2d at 751-52. Following that second best-interest hearing, the trial court found it was in the child's best interest to terminate the respondent's parental rights. S.B., 305 Ill. App.3d at 816, 239 Ill.Dec. 219, 713 N.E.2d at 752.
The Third District found the Act provides for successive parental termination proceedings. S.B., 305 Ill.App.3d at 818, 239 Ill.Dec. 219, 713 N.E.2d at 753. However, it determined the trial court in that case exceeded its authority by conducting parental termination proceedings on an oral request and in the absence of a written petition or motion. S.B., 305 Ill. App.3d at 818, 239 Ill.Dec. 219, 713 N.E.2d at 753. The court's decision contains no expression that the trial court erred by proceeding directly with a second bestinterest hearing rather than redetermining the respondent to be unfit.
It is clear from the Act and case law that termination proceedings involve a distinct two-step process, requiring a determination of parental fitness and then considerations of what is in the child's best interests. Before a court may consider a child's best interests it must find a parent unfit pursuant to grounds contained in the Adoption Act. Successive termination proceedings are also permissive and we find no requirement that parental fitness must be redetermined once a parent has been found unfit and where a successive petition or motion to terminate has been filed.
Here, the trial court found respondent was unfit and, as discussed, that finding was not against the manifest weight of the evidence. Also, that finding was not altered by the court's initial decision that termination was not in M.R.'s best interests.
*345 We also note the trial court's unfitness determination was deemed appropriate based on grounds that respondent failed to make reasonable progress toward M.R.'s return during any nine-month period following the neglect adjudication, specifically November 24, 2005, through August 24, 2006. That particular unfitness ground speaks to a very specific nine-month period. The evidence supporting a finding of unfitness as alleged in this case would be the same now and in the future as it was when the fitness hearing was originally conducted.
In this instance, the trial court was not required to redetermine respondent's fitness. It did not err by allowing the matter to proceed with a best-interests hearing.
On appeal, respondent also argues the trial court's finding that termination was in M.R.'s best interests was against the manifest weight of the evidence.
The State must prove that termination is in the child's best interests by a preponderance of the evidence. In re D.T., 212 Ill.2d 347, 366, 289 Ill.Dec. 11, 818 N.E.2d 1214, 1228 (2004). "The court's best-interest finding will not be reversed unless it is against the manifest weight of the evidence." In re Veronica J., 371 Ill.App.3d 822, 831-32, 311 Ill.Dec. 148, 867 N.E.2d 1134, 1142 (2007).
At the successive best-interest hearing, Rakers testified about events in case that occurred following the trial court's decision in August 2007, that termination was not in M.R.'s best interests. Rakers stated that, since September 2007, she requested that respondent submit to 24 random urine drops. Respondent, however, completed only six. Rakers testified she received results back for four of respondent's six drops.
On November 16, 2007, respondent submitted a drop that came back as diluted to 6.2. Rakers testified "diluted" "means that there's something that is covering it up" and many times people "will drink a lot of water to try to hide that they're using." She testified that anything diluted below 20 is considered suspicious. On November 30, 2007, respondent submitted a drop that was diluted to 5.6. Additionally, drops on January 10 and August 14, 2008, were diluted but also positive for cocaine. Rakers was unable to obtain answers from respondent as to the reasons behind her diluted or positive drops.
Rakers testified she attempted to meet with respondent and refer her back to drug and alcohol counseling but respondent avoided her. At respondent's request, Rakers did rerefer respondent for counseling for depression but respondent failed to show up for her counseling appointment.
The record also shows respondent missed several visitations with M.R. Rakers testified that respondent was permitted visitations with M.R. twice a month and, since September 2007, was offered 29 visits. According to Rakers, respondent attended only 14 of the 29 available visits and missed 15.
Additionally, evidence at the hearing showed M.R. was 11 years old and had been living in her current foster home for over one year. Rakers testified M.R.'s foster family was willing to provide her with permanency and M.R. was happy and wanted to remain with that family. M.R. received lots of attention at her foster home because the only other child in the home was a teenager, resulting in positive changes in M.R.'s behavior.
Rakers further testified M.R. was diagnosed with reactive attachment disorder and it was recommended that she see an attachment counselor; however, her therapy *346 could not begin until permanency was decided. Rakers noted respondent informed her that it would be at least two more years before respondent could take M.R. back.
The record reflects that following the trial court's initial best-interest determination respondent resumed her drug use, failed to engage in services, and failed to have consistent visitation with M.R. Also, M.R. was doing well in her foster home and had the opportunity for permanency. Based on this evidence, the court's decision to terminate respondent's parental rights was not against the manifest weight of the evidence.
On appeal, respondent next argues the trial court erred by denying her motion for an independent medical examination of M.R. She contends a court-appointed psychologist diagnosed M.R. with reactive attachment disorder and she sought an independent opinion. Respondent concedes on appeal that the record contains neither her motion nor an order by the trial court either granting or denying the motion. After reviewing the record, we find that it does contain respondent's motion but no court ruling on the motion.
"To determine whether a claimed error occurred, a court of review must have before it a record of the proceedings below." Webster v. Hartman, 309 Ill.App.3d 459, 460, 242 Ill.Dec. 777, 722 N.E.2d 266, 268 (1999). "The appellant bears the burden to present a sufficiently complete record, and this court will resolve any doubts that arise from an incomplete record against the appellant." Webster, 309 Ill.App.3d at 460, 242 Ill.Dec. 777, 722 N.E.2d at 268. Further, "[a] movant has the responsibility to obtain a ruling from the court on his motion to avoid waiver on appeal." People v. Redd, 173 Ill.2d 1, 35, 218 Ill.Dec. 861, 670 N.E.2d 583, 599 (1996).
Here, the record does not contain a ruling by the trial court on respondent's motion. It is unclear whether the record is simply incomplete, in that the court ruled on the motion but the ruling is absent, or whether respondent failed in her duty to bring her motion to the court's attention and no ruling was ever obtained. In either event, we find the court committed no error.
Respondent's last contention on appeal is that the trial court erred by denying her attorney's motion to continue the best-interest hearing due to her absence, to reopen evidence, and to admit evidence of her medical record to explain her absence from the best-interest hearing.
"[A] party has no absolute right to a continuance." Tashika F., 333 Ill.App.3d at 169, 266 Ill.Dec. 742, 775 N.E.2d at 307. The trial court's denial of a motion to continue will not be reversed on appeal absent an abuse of discretion. Tashika F., 333 Ill.App.3d at 169, 266 Ill. Dec. 742, 775 N.E.2d at 307.
Here, respondent failed to appear at the second best-interest hearing. Her attorney moved to continue but acknowledged that respondent was aware of the proceedings and he could not explain her absence. Respondent indicates a medical condition caused her absence. The trial court noted, however, that she had not been present for a number of hearings and the State asserted she had not appeared in court in over a year. The record also reflects the court had previously continued the matter on respondent's motion. Further, the case had been pending for a number of years and several months passed between the filing of the State's supplemental petition to terminate and the hearing. Given these *347 circumstances, we find no abuse of discretion in the court's denial of respondent's motion.
For the reasons stated, we affirm the trial court's judgment.
Affirmed.
TURNER and STEIGMANN, JJ., concur.