NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 190688-U

NO. 4-19-0688

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 3, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* C.S., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Vermilion County |
| Petitioner-Appellee, | ) | No. 17JA26 |
| v. | ) | |
| Kuslaiah B., | ) | Honorable |
| Respondent-Appellant). | ) | Thomas M. O'Shaughnessy, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Presiding Justice Steigmann and Justice Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The appellate court affirmed, concluding the trial court's findings respondent was an unfit parent and it was in the minor's best interest to terminate his parental rights were not against the manifest weight of the evidence.

¶ 2    Respondent father, Kuslaiah B., appeals from the trial court's order terminating his parental rights to C.S. (born February 2, 2006). On appeal, respondent argues the trial court's findings he was an unfit parent and it was in the minor's best interest to terminate his parental rights were against the manifest weight of the evidence. We disagree and affirm.

¶ 3                                    I. BACKGROUND

¶ 4    In July 2019, the State filed a petition to terminate respondent's parental rights to C.S. Paragraph 6a of the petition alleged respondent was an unfit parent as he failed to maintain a reasonable degree of interest, concern, or responsibility as to the minor's welfare. Paragraph 6b of the petition alleged respondent was an unfit parent as

"[t]he child is in the guardianship of the Illinois Department of Children and Family Services [(DCFS)] and the parent was incarcerated as a result of a criminal conviction at the time of the filing of this petition, and prior to incarceration the parent had little or no contact with the child, or provided little or no support for the child, and the parent's incarceration will prevent the parent from discharging his parental responsibilities for the child for a period in excess of [two] years after the filing of this petition."

The petition further alleged it would be in the minor's best interest to terminate respondent's parental rights.

¶ 5 In October 2019, the trial court held a fitness hearing. The court heard testimony from respondent, the minor's mother, and the minor's caseworker. We note the record discloses respondent pointed his finger in a gun-like fashion at the minor's mother after she testified. The following is gleaned from the testimony presented.

¶ 6 Despite being aware of the minor's birth, respondent visited with the minor only once before DCFS became involved. He also never provided the minor's mother with child support.

¶ 7 At the time of the filing of the petition to terminate parental rights, respondent was incarcerated. Respondent remained incarcerated and had a projected parole date in June 2025. When asked if there was a possibility that he would "get out" earlier than June 2025, respondent testified, "I'm scheduled to get out [December] 2022."

¶ 8 After DCFS became involved, respondent received a service plan, which recommended counseling and parenting classes. Despite a desire to sign up for those services,

respondent was unable to do so because of the length of his remaining sentence. Respondent had visited with the minor approximately five times since being incarcerated. The minor's caseworker supervised a visit in November 2018 and believed the visit was "appropriate." Respondent also had sent the minor letters while incarcerated; however, he had not sent a letter since before August 2018. He never sent any gifts to the minor.

¶ 9    The State argued the evidence demonstrated respondent was an unfit parent as alleged in paragraphs 6a and 6b of its petition to terminate parental rights. Respondent argued the State failed to show he was an unfit parent as alleged in paragraph 6a of the petition. The guardian *ad litem* (GAL) argued the State had met its burden and established respondent was an unfit parent as alleged in paragraph 6b of its petition.

¶ 10    After considering the evidence and arguments presented, the trial court found the State had established respondent was an unfit parent as alleged in paragraphs 6a and 6b of its petition to terminate parental rights. Specifically, the court found:

> "[H]e has failed to maintain a reasonable degree of concern, and responsibility as to the minor's welfare and the child is in the guardianship of [DCFS]. Mr. Bridges was incarcerated as a result of criminal conviction at the time of the filing of the petition to terminate and prior to his incarceration he had little or no contact with the child, provided little or no support for the child and his incarceration will prevent him from discharging his parental responsibilities for a period in excess two years after the filing of this petition. The evidence is uncontradicted he had one visit with the child prior to the child going into care and he was incarcerated at the time of the filing of the petition. That prior to incarceration he provided little or no support to the child

and that he will not be released from custody of the Department of Corrections till December of 2022 which is a period in excess of two years from the filing of the petition. The Court notes father's incarceration is a result of his voluntary actions. It is by those voluntary actions that he is unable to complete services necessary for reunification."

¶ 11    Immediately following the fitness hearing, the trial court held a best-interest hearing. The court heard testimony from the minor's caseworker. The following is gleaned from the testimony presented.

¶ 12    The minor, who was then 13 years old, had been placed with his maternal aunt for about two years. The minor's aunt provided the minor with a safe, loving environment. The minor had ties to the community where he lived and participated in multiple sport leagues. The minor attended unsupervised visits with his mother and sister. The minor expressed a desire to live with his aunt. The minor's mother supported the minor's aunt obtaining guardianship. The minor's caseworker believed guardianship would be in the minor's best interest.

¶ 13    Prior to DCFS involvement, respondent had visited with the minor only once. After DCFS became involved, the minor expressed an interest in visiting with respondent. He then visited with respondent approximately five times. During the year prior to the best-interest hearing, the minor no longer wished to visit with respondent. In June 2019, the minor refused to attend a scheduled visit. The minor had not received any letters or cards from respondent in at least a year.

¶ 14    The State argued the evidence demonstrated it would be in the minor's best interest to terminate respondent's parental rights. Respondent, through counsel, stated, "I don't have a position." The minor's mother and the GAL agreed with the State's position.

¶ 15    Based on the evidence and arguments presented, the trial court, after considering

the statutory best-interest factors found in section 1-3(4.05) of the Juvenile Court Act of 1987 (705 ILCS 405/1-3(4.05) (West 2018)), found it would be in the minor's best interest to terminate respondent's parental rights. The court entered a written order terminating respondent's parental rights.

¶ 16        This appeal followed.

¶ 17                                    II. ANALYSIS

¶ 18        On appeal, respondent argues the trial court's findings he was an unfit parent and it was in the minor's best interest to terminate his parental rights were against the manifest weight of the evidence.

¶ 19                                A. Unfitness Finding

¶ 20        Respondent asserts the trial court's finding he was an unfit parent was against the manifest weight of the evidence. The State disagrees.

¶ 21        In a proceeding to terminate parental rights, the State must prove parental unfitness by clear and convincing evidence. *In re N.G.*, 2018 IL 121939, ¶ 28, 115 N.E.3d 102. A trial court's finding of parental unfitness will not be disturbed on appeal unless it is against the manifest weight of the evidence. *Id.* ¶ 29. A finding is against the manifest weight of the evidence "only where the opposite conclusion is clearly apparent." *Id.*

¶ 22        The trial court found respondent was an unfit parent as defined in sections 1(D)(b) and 1(D)(r) of the Adoption Act (750 ILCS 50/1(D)(b), (D)(r) (West 2018)). Respondent asserts the court's finding under section 1(D)(b) was against the manifest weight of the evidence. Respondent does not address the court's finding under section 1(D)(r).

¶ 23        Only one ground for a finding of unfitness is necessary if it is supported by clear and convincing evidence. *In re Gwynne P.*, 215 Ill. 2d 340, 349, 830 N.E.2d 508, 514 (2005); *In*

*re M.R.*, 393 Ill. App. 3d 609, 613, 912 N.E.2d 337, 342 (2009). By challenging only one of the two grounds on which the trial court found him unfit, respondent has conceded his unfitness on the unchallenged ground of unfitness (*In re D.L.*, 326 Ill. App. 3d 262, 268, 760 N.E.2d 542, 547 (2001)), and he has forfeited any argument he may have had on the unchallenged ground by failing to raise it in his brief (see Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018); *In re K.J.*, 381 Ill. App. 3d 349, 353, 885 N.E.2d 1116, 1120 (2008)).

¶ 24        Setting aside respondent's concession and forfeiture, the trial court's finding respondent was an unfit parent under section 1(D)(r) of the Adoption Act (750 ILCS 50/1(D)(r) (West 2018)) was not against the manifest weight of the evidence. Under section 1(D)(r), a parent is "unfit" if

> "[t]he child is in the temporary custody or guardianship of [DCFS],
> the parent is incarcerated as a result of criminal conviction at the
> time the petition or motion for termination of parental rights is filed,
> prior to incarceration the parent had little or no contact with the child
> or provided little or no support for the child, and the parent's
> incarceration will prevent the parent from discharging his or her
> parental responsibilities for the child for a period in excess of [two]
> years after the filing of the petition or motion for termination of
> parental rights." *Id.*

The evidence demonstrated (1) the minor was in the temporary custody and guardianship of DCFS, (2) respondent was incarcerated at the time of filing of the petition to terminate parental rights, (3) respondent had little contact with, and provided no support for, the minor prior to his incarceration, and (4) respondent's incarceration would prevent him from discharging his parental

responsibilities for a period in excess of two years after the filing of the petition to terminate parental rights. Given this evidence, the trial court's finding respondent was an unfit parent under section 1(D)(r) was not against the manifest weight of the evidence, and we need not address the other ground for the court's unfitness finding. See *In re Z.M.*, 2019 IL App (3d) 180424, ¶ 70, 131 N.E.3d 1122.

¶ 25                                    B. Best-Interest Findings

¶ 26        Respondent asserts the trial court's finding it was in the minor's best interest to terminate his parental rights was against the manifest weight of the evidence. The State disagrees.

¶ 27        At the best-interest stage, a "parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *In re D.T.*, 212 Ill. 2d 347, 364, 818 N.E.2d 1214, 1227 (2004). The State must prove by a preponderance of the evidence termination is in the child's best interests. *Id.* at 367. When considering whether termination of parental rights would be in a child's best interest, the trial court must consider several statutory factors within the context of the child's age and developmental needs. See 705 ILCS 405/1-3(4.05) (West 2018).

¶ 28        This court will not reverse a trial court's finding termination of parental rights is in a child's best interests unless it is against the manifest weight of the evidence. *In re Anaya J.G.*, 403 Ill. App. 3d 875, 883, 932 N.E.2d 1192, 1199 (2010). Again, a finding is against the manifest weight of the evidence only where the opposite conclusion is clearly apparent. *Id.*

¶ 29        The evidence at the best-interest hearing demonstrated the minor, who was then 13 years old, expressed a desire to live with his aunt, who he had been placed with for about two years. The minor's aunt provided the minor with a safe, loving environment. The minor had ties to the community where he lived and attended visits with his mother and sister. Conversely, the

minor's relationship with respondent was essentially nonexistent. The minor had visited with respondent approximately six times in 13 years. The minor had not received any letters or cards from respondent in at least a year. The minor expressed that he no longer wished to visit with respondent. Given this evidence, the trial court's finding it was in the minor's best interest to terminate respondent's parental rights was not against the manifest weight of the evidence.

¶ 30                                    III. CONCLUSION

¶ 31          We affirm the trial court's judgment.

¶ 32          Affirmed.