NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 230031-U

NO. 4-23-0031

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 7, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* A.W., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Mason County |
| Petitioner-Appellee, | ) | No. 20JA11 |
| v. | ) | |
| Brittany W., | ) | Honorable |
| Respondent-Appellant). | ) | Alan D. Tucker, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices Doherty and Knecht concurred in the judgment.

**ORDER**

¶ 1   *Held*: (1) The trial court's best-interest determination was not against the manifest weight of the evidence.

(2) Respondent forfeited her claim that she received ineffective assistance of counsel.

¶ 2        Respondent, Brittany W., appeals from the trial court's judgment terminating her parental rights as to her minor child, A.W. (born in April 2010). On appeal, respondent argues (1) the trial court erred in finding termination of her parental rights to be in A.W.'s best interest and (2) her attorney rendered ineffective assistance of counsel. We affirm.

¶ 3                        I. BACKGROUND

¶ 4        On February 27, 2020, the State filed a petition for adjudication of wardship, alleging A.W. was neglected pursuant to section 2-3(1)(a), (b) of the Juvenile Court Act of 1987

(Juvenile Court Act) (705 ILCS 405/2-3(1)(a), (b) (West 2020)) because (1) respondent's "home [wa]s not suitable for the minor to stay in," (2) respondent "ha[d] been leaving [A.W.] in the care of others and [wa]s often unable to be reached," and (3) there were concerns respondent was using methamphetamine.

¶ 5         On July 28, 2020, the trial court conducted an adjudicatory hearing. Respondent stipulated to the allegations in the State's petition, and the trial court entered an adjudicatory order finding A.W. was neglected. On August 25, 2020, following a hearing, the trial court entered a dispositional order finding respondent unfit to care for A.W. and making her a ward of the court.

¶ 6         On February 19, 2021, respondent's counsel, Peter Lynch, filed a motion to withdraw, alleging that "[d]ue to the irretrievable breakdown in communication between counsel and the Respondent-Mother, the undersigned attorney can no longer zealously represent the Respondent-Mother in this case." At a permanency review hearing conducted on February 23, 2021, the trial court granted counsel's motion to withdraw and appointed Katherine Smith-Thornton to represent respondent.

¶ 7         On March 17, 2022, the State filed a petition seeking to terminate respondent's parental rights as to A.W. The State alleged respondent was an unfit parent within the meaning of section 1(D)(m)(i), (ii) of the Adoption Act (750 ILCS 50/1(D)(m)(i), (ii) (West 2022)) because she failed to (1) make reasonable efforts to correct the conditions that led to A.W.'s removal during the nine-month period from April 28, 2021, to January 28, 2022, and (2) make reasonable progress toward A.W.'s return during the same nine-month period.

¶ 8         On July 5, 2022, the trial court entered a "Termination Hearing Order" finding the State had proven respondent unfit by clear and convincing evidence. The court's order indicated

respondent had stipulated to the allegations in the State's termination petition. No transcript of the fitness hearing was included in the record on appeal.

¶ 9            On August 17, 2022, the State, through the Illinois Department of Children and Family Services (DCFS), filed a "Best Interest Hearing Court Report." According to the best-interest report, A.W. had been in the same foster home since the case was opened. She expressed to the caseworker that she viewed her current residence as her home and wished to remain with her foster parents. A.W.'s foster parents encouraged her to maintain relationships with her extended family, "including her maternal grandparents, maternal aunt, maternal cousins, and paternal aunt." The report further indicated that A.W. was "provided with a consistent routine, boundaries, and structure in the [foster] home," and "the current caregivers have demonstrated the ability to meet [A.W.'s] basic needs as well as demonstrates [*sic*] their commitment to [providing] a safe, stable[,] and nurturing home since case opening." Beginning in November 2021, A.W. began refusing to visit with respondent. The caseworker asked A.W. each month if she wished to visit with respondent, and each month A.W. indicated that she did not. Ultimately, the best-interest report concluded that "it would be in [A.W.'s] best interest to terminate [respondent's] parental rights so that permanency for [A.W.] can be achieved in the form of adoption."

¶ 10           On August 30, 2022, the trial court held a best-interest hearing. According to a docket entry, one witness, Melanie Nelson, testified at the hearing. Nelson is identified in the record as a DCFS child welfare specialist. The record does not contain a transcript of the best-interest hearing. The trial court entered an order finding termination of respondent's parental rights to be in A.W.'s best interest.

¶ 11　　　　　On September 27, 2022, respondent filed a motion to reconsider the termination of her parental rights. Respondent alleged the trial court "did not consider all the evidence in determining the best interests of the minor." The trial court denied respondent's motion to reconsider on November 29, 2022.

¶ 12　　　　　This appeal followed.

¶ 13　　　　　　　　　　　　　　　　II. ANALYSIS

¶ 14　　　　　As an initial matter, we must address the delay in issuing this decision. Illinois Supreme Court Rule 311(a)(5) (eff. July 1, 2018) provides that, except for good cause shown, this court must issue its decision within 150 days after the filing of the notice of appeal. Respondent filed the initial notice of appeal in this court on January 6, 2023. The appeal was dismissed on January 19, 2023, for failure to file the docketing statement, but it was reinstated on respondent's motion on February 9, 2023. On March 1, 2023, respondent filed a motion for a 60-day extension to file her appellant's brief. In granting respondent's motion, we noted that extensions of time are disfavored in accelerated appeals and the delay caused by the dismissal and reinstatement, coupled with the motion for an extension of time, would prevent this court from issuing its decision within 150 days. Thus, we find good cause has been shown for the delay.

¶ 15　　　　　Turning to the merits, on appeal, respondent argues (1) the trial court erred in finding termination of her parental rights was in A.W.'s best interest and (2) her attorney provided ineffective assistance of counsel.

¶ 16　　　　　　　　　　　　A. The Best-Interest Determination

¶ 17　　　　　First, respondent argues the trial court erred in finding termination of her parental rights was in A.W.'s best interest. In support of her argument, respondent contends the record

- 4 -

contains "zero evidence" she endangered A.W. between April 28, 2021, and January 28, 2022, A.W.'s "identity development" weighs against terminating respondent's parental rights, and A.W. "had a good visit with [respondent]." We will not reverse a best-interest determination absent a finding it was against the manifest weight of the evidence, which occurs "only if the facts clearly demonstrate that the court should have reached the opposite result." *In re Jay. H.*, 395 Ill. App. 3d 1063, 1071 (2009).

¶ 18          We initially note that the State argues, in part, respondent has failed to provide this court with a sufficiently complete record to review her claim challenging the trial court's best-interest determination. We agree. "To determine whether a claimed error occurred, a court of review must have before it a record of the proceedings below. [Citation.] The appellant bears the burden to present a sufficiently complete record, and this court will resolve any doubts that arise from an incomplete record against the appellant." (Internal quotation marks omitted.) *In re M.R.*, 393 Ill. App. 3d 609, 618 (2009). Here, the record contains no transcript of the best-interest hearing. We know that Nelson, a DCFS child welfare specialist, gave sworn testimony. However, we do not know the substance of her testimony or the trial court's basis for its subsequent best-interest finding. In the absence of a transcript or bystander's report, we will presume the court heard adequate evidence to support its best-interest finding. *Webster v. Hartman*, 195 Ill. 2d 426, 433-34 (2001).

¶ 19          Even if we were to overlook appellant's failure to provide a transcript of the best-interest hearing, we would find sufficient evidence exists in the record to support the court's best-interest finding. Section 2-29 of the Juvenile Court Act (705 ILCS 405/2-29 (West 2022)) "delineates a two-step process in seeking termination of parental rights involuntarily." *In re J.L.*, 236 Ill. 2d 329, 337 (2010). Relevant to the instant appeal is the second step—*i.e.*, the

best-interest stage—at which the trial court must determine whether the State has proven by a preponderance of the evidence that termination of the respondent's parental rights is in the minor's best interest. 705 ILCS 405/2-29(2) (West 2022). At the best-interest stage, the focus shifts from the parent to the child, and the issue is "whether, in light of the child's needs, parental rights should be terminated." (Emphasis omitted.) *In re D.T.*, 212 Ill. 2d 347, 364 (2004). Thus, "the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *Id.* Section 1-3 of the Juvenile Court Act (705 ILCS 405/1-3(4.05) (West 2022)) lists the best-interest factors for the court to consider, in the context of the minor's age and developmental needs, when making its best-interest determination: (1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's background and ties; (4) the child's sense of attachments; (5) the child's wishes and long-term goals; (6) the child's community ties; (7) the child's need for permanence; (8) the uniqueness of every family and child; (9) the risks associated with substitute care; and (10) the preferences of the persons available to care for the child.

¶ 20 Here, the best-interest report prepared by DCFS in advance of the hearing, which was available for the trial court's consideration, contains sufficient evidence to support the court's best-interest determination. According to the best-interest report, A.W. had been in the same foster home since the case was opened. She expressed to the caseworker that she viewed her current residence as her home and wished to remain with her foster parents. A.W.'s foster parents encouraged her to maintain relationships with her extended family, "including her maternal grandparents, maternal aunt, maternal cousins, and paternal aunt." The report further indicated that A.W. was "provided with a consistent routine, boundaries, and structure in the [foster] home," and "the current caregivers have demonstrated the ability to meet [A.W.'s] basic

needs as well as demonstrates [*sic*] their commitment to [providing] a safe, stable[,] and nurturing home since case opening." Therefore, based not only on the absence of a transcript of the best-interest hearing, requiring us to resolve any doubts against respondent, but also in consideration of the best-interest report, we reject respondent's argument the trial court's best-interest determination was against the manifest weight of the evidence.

¶ 21                              B. Ineffective Assistance of Counsel

¶ 22            Next, respondent argues Lynch, her initial attorney, misled her and provided ineffective assistance by erroneously advising her at the adjudicatory hearing on July 28, 2020, that "if she stipulated to the petitions, as amended, *** she would have [A.W.] returned to her that day and it would only make th[e] process quicker." Respondent asserts that she relied on Lynch's erroneous advice and, because of this reliance, "didn't feel that she needed to complete the services because she felt she had a meritorious defense to all the allegations in the petition." Respondent also notes her alleged conversation with Lynch took place in a conference room and therefore is not part of the record.

¶ 23            We find respondent has forfeited her ineffective-assistance claim by failing to comply with Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020). Rule 341(h)(7) provides, in pertinent part, that the argument section of an appellant's brief "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." *Id.* Here, respondent did not cite to a single authority in support of her claim. Instead, her entire argument consists of three sentences, which include the conclusory assertion that her attorney's allegedly misleading advice was "clearly ineffective assistance of counsel." Because respondent has failed to cite to any authority, let alone present a reasoned argument to this court, we decline to address her claim of ineffective assistance of counsel. See *id.*

¶ 24    We further note that, as argued by the State, respondent has also forfeited her ineffective-assistance claim by failing to raise it in the trial court or include it in her posttrial motion to reconsider. See, *e.g.*, *People v. Enoch*, 122 Ill. 2d 176, 186 (1988) ("Both a trial objection and a written post-trial motion raising the issue are required for alleged errors that could have been raised during trial." (Emphases omitted.)). Despite basing her claim on the allegation that counsel misled her in July 2020—more than two years before the trial court made its best-interest determination—respondent never brought it to the trial court's attention. Moreover, she did not include the issue in her motion to reconsider. Thus, respondent has additionally forfeited her argument by failing to raise it in the trial court or include it in her motion to reconsider. See *id.*

¶ 25                              III. CONCLUSION

¶ 26    For the reasons stated, we affirm the trial court's judgment.

¶ 27    Affirmed.