2026 IL App (2d) 250415-U
No. 2-25-0415
Order filed February 3, 2026

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

*In re* Adoption of N.M.G, a Minor

(A.G., Petitioner-Appellee v. K.R., Respondent-Appellant.)

Appeal from the Circuit Court of Kane County.
Honorable M. Lark Cowart, Judge, Presiding.
No. 24-AD-003

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices Hutchinson and Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Appellate counsel's motion to withdraw is granted because there are no issues of arguable merit to be raised on appeal regarding the termination of respondent's parental rights.

¶ 2    Respondent, K.R., appeals from the trial court's order finding him unfit to parent his child, N.M.G. (born April 21, 2021), and terminating his parental rights. His appellate counsel has moved to withdraw under *Anders v. California*, 386 U.S. 738 (1967), stating that he has read the record and concluded there exist no issues of arguable merit to be raised on appeal. See *In re S.M.*, 314 Ill. App. 3d 682, 685 (2000) (holding that *Anders* applies to cases involving termination of parental rights). Counsel has supported his motion with a memorandum of law providing a statement of facts, potential issues, and argument as to why those issues lack arguable merit. See

*In re Alexa J.*, 345 Ill. App. 3d 985, 988 (2003) (further holding that "counsel must identify at least one potentially justiciable issue in a motion to withdraw under *Anders*"). Counsel served respondent with a copy of the motion and memorandum. We advised respondent that he had 30 days to respond to counsel's motion. That time has passed, and no response was filed. We conclude that this appeal lacks arguable merit based on the reasons set forth in counsel's memorandum. Therefore, we grant counsel's motion and affirm the trial court's judgment.

¶ 3                                    I. BACKGROUND

¶ 4      On January 11, 2024, petitioner, A.G., filed a verified petition seeking to adopt the minor, N.M.G.. See 750 ILCS 50/5 (West 2022). As is relevant here, the petition alleged that A.G., the minor's maternal aunt, had exercised exclusive care and physical custody of the minor since September 2023, and that the minor's mother, M.M.G., intended to consent to the adoption. The petitioner further alleged that grounds existed to terminate K.R.'s parental rights based on his failure to maintain a reasonable degree of interest, concern, or responsibility for the minor (*id.* § 1(D)(b)) or, alternatively, based on depravity (*id.* § 1(D)(i)). A.G. requested a judgment permitting her to adopt the minor. The trial court subsequently granted A.G. temporary custody and appointed a guardian *ad litem* (GAL) to investigate the minor's best interests.

¶ 5      On July 31, 2025, the trial court held a fitness hearing on the adoption petition. At the outset, the parties stipulated that K.R. would not be found unfit based on depravity (*id.*) and that he had not failed to maintain a reasonable degree of interest or concern for the minor's welfare (*id.* § 1(D)(b)). The parties further stipulated that K.R. was incarcerated at a federal prison in Texas, Beaumont Low (Beaumont), and that his anticipated release date was in August 2028, absent any grant of clemency or commutation.

¶ 6    A.G. testified that she lived in Richland, Missouri, and began exclusively caring for and providing for the minor's needs in September 2023, when her sister decided to place the minor for adoption. Since that time, K.R. had not provided any financial support or sent clothes, food, or toys for the minor. According to A.G., K.R. never sent letters or emails, sought updates regarding the minor's well-being, or otherwise attempted to contact her. In June 2024, A.G. was contacted by K.R.'s fiancée, Kelly Banner, who sought to facilitate contact between the minor and K.R.'s family. A.G. told Banner not to contact her again because she did not believe it was safe to communicate by email with a stranger regarding contact with the minor. A.G. testified that she had met K.R.'s mother once or twice, but the minor had never had contact with her. Neither K.R. nor any of his family members attempted to establish contact with the minor. A.G. further testified that she did not initiate contact with K.R. because he was incarcerated and, based on his criminal history, she did not believe contact would be appropriate.

¶ 7    M.M.G. testified that K.R. never provided financial support directly for the minor. While they were dating, K.R. provided her with some financial assistance, including funds for video visits with him while he was incarcerated, childcare, and to recover her repossessed vehicle. She estimated that she received between $5,000 and $10,000 during that time, but testified that the funds were primarily for her personal expenses rather than for the minor. The money was sent by Venmo from K.R.'s mother, who held power of attorney over K.R.'s finances due to his incarceration. M.M.G. further testified that K.R. sent some winter clothing for the minor in 2021 but had not provided any items or financial support for the minor since her relationship with K.R. ended, which occurred prior to September 2022. She testified that K.R. was incarcerated in January 2021 and the minor was born in April 2021.

¶ 8    M.M.G. further testified that after the minor's birth, K.R. participated in video calls with the minor approximately once or twice a week, but that this contact ended prior to September 2023. She testified that most of the calls with K.R. occurred late at night when the minor was asleep and that K.R. spent only brief periods interacting with the minor. According to M.M.G., the majority of the calls were intended to maintain her relationship with K.R. rather than to facilitate a relationship between K.R. and the minor. She testified that K.R.'s sporadic contact with the minor ceased when the minor was about two years old. In August 2023, before the minor began living with A.G., M.M.G. and her father spoke with K.R. and informed him of the decision to allow A.G. to adopt and raise the minor. M.M.G. testified that during the call, K.R. stated he was willing to give up his parental rights, but a couple days later he stated that he was planning to contest the adoption. M.M.G. last spoke with K.R. in October 2024, when he stated that he wanted to be involved in the minor's life and requested pictures of the minor.

¶ 9    Philip Lengle testified that he was appointed GAL to conduct a best-interest investigation for the minor. He interviewed the minor's biological parents; A.G.; K.R.'s girlfriend, Kelly Banner; M.M.G.'s parents; and Lee West, a representative of Beaumont. He also reviewed documents provided by the parties, including records concerning K.R.'s criminal history and financial support provided to the minor. Based on the documents reviewed, K.R. paid M.M.G. $5,756 for video calls during his incarceration and about $5,259 for rent between February and June 2021. An additional $1,848 paid for car expenses in June 2021, along with various utility payments, as K.R. and M.M.G. had been living together before he went to prison. Lengle testified that K.R. did not reach out to A.G. because he did not know how to contact her. Lengle opined that K.R.'s financial contributions were spotty and irregular and that most payments slowed after K.R. was incarcerated at Beaumont.

¶ 10    Lengle acknowledged that K.R. received a personal-injury settlement, and those funds were used for the payments to M.M.G. that were sent through K.R.'s mother. K.R. worked at Beaumont, though Lengle did not recall whether K.R. was paid. K.R.'s projected release date was August 22, 2028. Prior to his incarceration, K.R.'s primary source of income was earned by transporting drugs from Colorado to Missouri. Although K.R. was also a licensed real estate broker, he did not earn income from real estate. Lengle further testified that K.R. paid the initial half of his retainer fee but that he currently owed about $2,000.

¶ 11    K.R. testified that he had been incarcerated since the minor's birth and was housed at multiple facilities before being transferred to Beaumont in January 2022, where he earned approximately $19 per month. He acknowledged receiving $112,000 from a personal-injury settlement arising from a car accident. He did not use any of his funds to establish a savings account or trust for the minor. He stated that he provided M.M.G. with approximately $10,000 while they were dating, some of which benefited the minor, but he did not send money to A.G. because he did not know where A.G. or the minor lived. When asked whether he paid his attorney a retainer, K.R. testified that he probably did but did not know the amount because his mom and Banner "take care of all that." When asked if they used K.R.'s money, he said that he was not sure.

¶ 12    K.R. acknowledged that he was aware A.G. had been caring for the minor since September 2023. Although he had the ability to contact Banner and M.M.G., hired attorneys for both a parentage action and the present case, and communicated from prison via cell phone, he never attempted to contact A.G.. He admitted that he had A.G.'s email address as of June 2024, but neither he nor his family reached out, citing A.G.'s refusal to communicate with Banner. He also acknowledged that he could have sent financial support for the minor to M.M.G. via Venmo, as his mother had done, but failed to do so.

¶ 13     K.R. further testified that he initially maintained frequent phone and video contact with M.M.G. and the minor following the child's birth, including video visits during which he observed the minor learning to crawl, sit up, and speak.  That contact ended in mid to late 2021, when M.M.G. began a relationship with another man, after which his contact with her became sporadic.  He testified that M.M.G. relocated from Missouri to Illinois and that he did not know her new address.  He stated that he did not know A.G.'s address or the maternal grandparents' address and never sent letters or gifts for that reason, although acknowledging that he never asked M.M.G. for that information.  In August 2023, K.R. filed a paternity action because he believed he was not listed on the birth certificate and wanted to establish himself as the minor's father, be involved in her life, and provide support.  He expressed a desire to form a relationship with the minor upon his release from prison and testified that, in the interim, his family was willing to assist with the minor's care.

¶ 14     In closing arguments, A.G. requested a finding of unfitness based on K.R.'s failure to maintain a reasonable degree of interest, concern, or responsibility for the minor.  A.G. asserted that K.R. did not provide financial support for the minor after his relationship with M.M.G. ended.  She further argued that, despite having some financial means, K.R. never delegated a family member to assist with providing financial support for the minor.  Although K.R. contacted A.G. through Banner, he never offered A.G. money to support the minor.  A.G. argued that responsibility required ensuring that the minor's basic needs were met, including food, shelter, and clothing, and that K.R. thus failed to maintain any responsibility for the minor.

¶ 15     K.R. argued that the evidence demonstrated his interest in and concern for the minor, and that the main issue was whether he exercised reasonable responsibility.  He asserted that he showed responsibility by financially supporting M.M.G. after the minor's birth, filing a parentage action,

and having Banner contact A.G. by email. He argued that sending letters or emails to a child too young to read would have been futile, as he could not rely on M.M.G. or A.G. to read them to the minor or assist in facilitating a relationship. Given his incarceration, K.R. argued that he had been as responsible as possible and requested that he not be found unfit.

¶ 16 The trial court acknowledged the hostility of the minor's family toward K.R. but nonetheless found that K.R. failed to maintain a reasonable degree of interest, concern, or responsibility for the minor. The trial court stated that responsibility required more than financial support and that it was required to consider K.R.'s specific circumstances. The court found that K.R. could have done more to maintain contact with the minor, noting that he could have asked M.M.G. for A.G.'s or the maternal grandparents' phone numbers in order to maintain communication. K.R. never asked for that information or attempted to learn what the minor needed.

¶ 17 Further, the trial court noted that K.R.'s relationship with M.M.G. ended when the minor was about a year old and that, between that time and when the minor moved in with A.G., K.R. never requested continued weekly phone calls with the minor. Although Banner contacted A.G., K.R. never personally did so, despite having the ability to send letters and emails from prison. The trial court observed that most of the funds K.R. provided to M.M.G. were paid while they were still dating and that K.R. did not seem interested in maintaining a relationship with the minor until the adoption petition was filed. Of the approximately $10,000 provided, about half was used to pay for video calls with M.M.G. during their dating relationship, and the time spent communicating with the minor was minimal. K.R. did not continue to send funds through his mother. The trial court also commented that K.R. was largely unaware of how his funds were

spent or how his bills were paid and did not appear aware of whether the GAL in this case had been paid.

¶ 18    On August 21, 2025, the trial court conducted a best interest hearing without a court reporter or audio recording. The parties thus filed an agreed statement of facts regarding the hearing. Lengle testified that he interviewed the parties, reviewed documents, correspondence, and other materials, and conducted at least one virtual visit with A.G. and her partner, Roy, during which he observed their interactions with the minor. He testified that the minor referred to A.G. and Roy as "mom" and "dad." The minor appeared to be thriving in her current home environment, was attached to A.G. and Roy, and was well cared for. Lengle opined that it would not be in the minor's best interest to be removed from the only home she had known since September 2023. A.G. testified that she was open to the minor having future contact with her paternal relatives when and if such contact was appropriate and beneficial. She stated that her household was stable, loving, and suitable for raising the minor and described the minor as happy, healthy, and well-adjusted, with a strong bond to A.G. and Roy.

¶ 19    Following argument, the trial court found that A.G. and Roy had acted as the minor's parents since September 2023. The court further found that the minor's identity, background, culture, attachment, and family environment were carefully considered in determining her best interests. M.M.G. indicated that she intended to consent to the adoption if and when K.R.'s parental rights were terminated. Having found K.R. unfit, the trial court determined that termination of his parental rights and the granting of the adoption were in the minor's best interests.

¶ 20    On September 15, 2025, M.M.G. executed a final and irrevocable consent to adoption, and the trial court granted A.G.'s petition for adoption the following day. K.R. then filed a timely

notice of appeal, and the trial court appointed counsel to represent him on appeal. As noted, appellate counsel has moved to withdraw in accordance with *Anders*.

¶ 21                                    II. ANALYSIS

¶ 22    In his *Anders* motion, counsel asserts that the only potential issues he could raise regarding the finding of unfitness are (1) whether the trial court improperly considered evidence of K.R.'s interest and concern in evaluating his fitness despite the parties' stipulation that he had not failed to maintain those elements, and (2) whether there was sufficient evidence that K.R. failed to maintain reasonable degree of responsibility for the minor. Counsel further asserts that no viable argument can be made challenging the trial court's best interests determination.

¶ 23    A proceeding to involuntarily terminate parental rights may be brought only under the statutory authority of the Juvenile Court Act of 1987 (705 ILCS 405/1-1 *et seq.* (West 2022)) or the Adoption Act (750 ILCS 50/0.01 *et seq.* (West 2022)). *In re A.S.B.*, 381 Ill. App. 3d 220, 221 (2008). In either case, the goals of the termination proceedings are the same: (1) to determine whether the natural parent is unfit and, if so, (2) to determine whether termination and adoption are in the child's best interests. *Id.* at 221-22. Termination of parental rights is a serious matter, and a petitioner must prove parental unfitness by clear and convincing evidence. *In re Adoption of L.T.M.*, 214 Ill. 2d 60, 67-68 (2005). "Evidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question \*\*\*." *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74.

¶ 24    At issue here is the trial court's finding that K.R. was unfit based on his failure to maintain a reasonable degree of interest, concern or responsibility for the minor. 750 ILCS 50/1(D)(b) (West 2022). Since the statute is written in the disjunctive, a parent may be found unfit for failure to maintain a reasonable degree of interest *or* concern *or* responsibility for the child's welfare. *In re*

*Konstantinos H.*, 387 Ill. App. 3d 192, 204 (2008). In determining whether a parent has demonstrated reasonable interest, concern, or responsibility, the court must examine the parent's conduct "in the context of the circumstances in which that conduct occurred." *In re Adoption of Syck*, 138 Ill. 2d 255, 278 (1990). Moreover, "a court is to examine the parent's efforts to communicate with and show interest in the child, not the success of those efforts." *Id.* at 279.

¶ 25    Since the trial court is in the best position to observe the demeanor and conduct of the parties and witnesses, it is best situated to assess credibility and the weight of the witnesses' testimony. *In re E.S.*, 324 Ill. App. 3d 661, 667 (2001). The trial court is afforded broad discretion and great deference in matters involving minors. *Id.* Accordingly, the trial court's factual findings regarding a respondent's fitness and its credibility determinations are reviewed under the manifest weight of the evidence standard and will be reversed only where the opposite conclusion is clearly apparent. *In re M.R.*, 393 Ill. App. 3d 609, 613 (2009).

¶ 26    We agree with counsel that the potential issues he identifies lack arguable merit. The trial court's finding that K.R. failed to demonstrate a reasonable degree of interest and concern toward the minor is not reversible error, even though the parties stipulated that K.R. had not failed in those elements. First, stipulations do not automatically control the outcome of a case; a trial court, exercising sound judicial discretion, may set them aside to serve the interests of justice. See *Bloome v. Wiseman, Shaikewitz, MGivern, Wahl, Flavin & Hesi, P.C.*, 279 Ill. App. 3d 469, 479 (1996). Further, despite the stipulation, A.G. argued in closing at the fitness hearing that K.R. failed to maintain a reasonable degree of interest, concern or responsibility for the minor, and K.R. did not object. Accordingly, any argument that the trial court erred in finding K.R. unfit based on a failure to maintain reasonable interest or concern for the minor is forfeited. See *In re Tamera W.*, 2012 IL App (2d) 111131, ¶ 29 (the failure to raise an objection at trial generally forfeits

consideration of the claimed error on appeal).  Moreover, to the extent counsel contends that the trial court could have considered K.R.'s interest and concern when determining whether he maintained a reasonable degree of responsibility, it is well settled that a trial court is presumed to consider only proper evidence in reaching its decision.  *In re C.C.*, 224 Ill. App. 3d 207, 217 (1991).

¶ 27    Nonetheless, even if the trial court erred in not abiding by the stipulation, it is well settled that a trial court's determination of unfitness can be affirmed on a single ground, and a reviewing court need not consider additional grounds of unfitness.  *In re Tiffany M.*, 353 Ill. App. 3d 883, 891 (2004).  Here, the trial court's determination that K.R. failed to maintain a reasonable degree of responsibility for the minor is supported by the manifest weight of the evidence.

¶ 28    The evidence showed that K.R. provided some irregular financial support to M.M.G., indirectly benefitting the minor, while they continued their dating relationship during his incarceration.  This support ended around August 2022, when both began dating other people.  After the relationship ended, K.R. did not regularly send letters, gifts, or financial support to the minor.  Although he sent a $50 birthday gift via Venmo in April 2023, there was no regular support despite his personal-injury settlement exceeding $100,000.  K.R.'s mother could have continued to send financial support for the minor at K.R.'s direction, but he never directed her to do so.  K.R. also earned $19 per month in prison, yet there was no evidence that these funds were directed to support the minor.  While K.R. claimed he did not send letters or emails because he did not have the minor's address, the evidence showed that he knew the minor would be living with A.G. starting September 2023. Although Banner contacted A.G. regarding the minor, there was no evidence that K.R. personally reached out to A.G. to discuss the minor's welfare, arrange video visits, or provide financial support.

¶ 29   Based on this evidence, we cannot conclude that the trial court's fitness finding was against the manifest weight of the evidence.  Accordingly, we agree with counsel that no viable argument challenging the trial court's finding could be raised.

¶ 30   With respect to the best interests finding, the trial court determined that the minor was bonded with A.G. and Roy, that they had provided care and support for her since September 2023, and that it was in her best interests to terminate K.R.'s parental rights.  We agree with counsel that no viable argument can be raised challenging the court's best interests determination.

¶ 31                                     III. CONCLUSION

¶ 32   For the reasons stated, we grant appellate counsel's motion to withdraw and affirm the judgment of the circuit court of Kane County.

¶ 33   Motion granted; affirmed.