In June 1998, the State filed a supplemental petition seeking a finding of unfitness and the termination of the parental rights of respondent, Brandy Brown, regarding her minor child, Tashika F. (born in July 1991). In August 2001, the State filed an amended motion. After a hearing that same month, the trial court found respondent unfit. In February 2002, the trial court determined it would be in the child's best interest to terminate respondent's parental rights. Respondent appeals, asserting (1) the trial court erred in denying respondent's motion for continuance, and (2) the trial court's decision to terminate parental rights was against the manifest weight of the evidence. We affirm.
 I. BACKGROUND
In October 1994, the Macon County circuit court adjudicated Tashika neglected and entered a dispositional order, making her a ward of the court and appointing the Department of Children and Family Services (DCFS) as her guardian.
In June 1998, the State filed a supplemental petition to terminate respondent's parental rights, alleging respondent was an unfit parent because she (1) had a habitual addiction to drugs, other than those prescribed by a physician, for the past 12 months (750 ILCS 50/1(D)(k) (West Supp. 1997)); (2) failed to maintain a reasonable degree of interest, concern, or responsibility as to the child's welfare (750 ILCS 50/1(D)(b) (West Supp. 1997)); (3) failed to make reasonable efforts to correct the conditions that were the basis of the removal of the child from her and to make reasonable progress toward the return of the child within 12 months after the adjudication of neglect (750 ILCS 50/1(D)(m) (West Supp. 1997) (within 9 months)); and (4) had demonstrated an intent to forego her parental rights or interest as manifested by her failure for a period of 12 months to visit the child, communicate *Page 167 
with the child, maintain any contact or plan for the child's future, and make any good-faith effort to provide a reasonable amount for the financial support of the child (750 ILCS 50/1(D)(n) (West Supp. 1997)).
On August 2, 2001, the State filed an amended petition, contending respondent was an unfit parent because she (1) failed to maintain a reasonable degree of interest, concern, or responsibility as to the child's welfare (750 ILCS 50/1(D)(b) (West 2000)); (2) had been habitually drunk or addicted to drugs, other than those prescribed by a physician, for at least one year immediately prior to the commencement of the unfitness proceeding (750 ILCS 50/1(D)(k) (West 2000)); (3) had failed to make reasonable efforts to correct the conditions that were the basis for the removal of the child (750 ILCS 50/1(D)(m)(i) (West 2000)); and (4) had failed to make reasonable progress toward the return of the child to her during any nine months after the initial nine-month period following an adjudication of neglect (750 ILCS 50/1(D)(m)(iii) (West 2000)).
On August 16, 2001, the trial court held a hearing on the State's petition. At the beginning of the hearing, respondent requested the court to continue the hearing because her lawyer had not shown an interest in her. Respondent's attorney asserted respondent had been sent a letter dated February 23, 2001, (1) indicating she had been appointed as respondent's attorney, (2) providing the attorney's address and telephone number, and (3) informing respondent of an April 4, 2001, status hearing. When respondent did not appear on April 4, respondent's attorney sent respondent a letter informing respondent that, if she did not appear on May 2, 2001, her parental rights could be terminated. Respondent appeared late to the May 2, 2001, hearing, and the trial court set the August 16, 2001, hearing date for the petition with respondent present. Respondent's attorney sent respondent another letter informing her of the August 16, 2001, hearing date and urging respondent to contact the attorney's office as soon as possible. According to respondent's attorney, an appointment was set for August 10, 2001, and respondent failed to appear. Respondent's attorney noted she was not prepared for respondent's hearing.
The State noted it had been trying to have a hearing on the petition since 1998, and respondent had a history of failing to appear in court and not cooperating with her attorneys. The guardian ad litem argued the case had been going on for seven years and permanency for the child was needed. The guardian further asserted that respondent had been standing in the way of the proceeding for the last two years.
The trial court denied respondent's motion and held the unfitness hearing. At the conclusion of the hearing, the trial court found respondent unfit under sections 1(D)(b), 1(D)(m)(i), and 1(D)(m)(iii) of *Page 168 
the Adoption Act (750 ILCS 50/1(D)(b), (D)(m)(i), (D)(m)(iii) (West 2000)).
In February 2002, the trial court held a best interest hearing. Nancy Jorgesen, an adoption worker at the Baby Fold, testified she had been involved with Tashika's case since July 1999. According to Jorgesen, Tashika had many health problems, learning disabilities, and developmental delays that place her in a trainable mentally handicapped range. Jorgesen had been looking for an adoptive home for Tashika for approximately a year and a half but had not been successful in finding an adoptive home. Jorgesen opined a possibility of adoption for Tashika did exist but the outlook was "not real positive." Jorgesen would not place Tashika with a family that had younger children because Tashika tended to bully younger children. She believed that continued family contact was important for Tashika because she was close to her grandmother and sister. Jorgesen testified no connection between Tashika and respondent existed.
Mary Fraelle, a caseworker with the Baby Fold, testified she had been Tashika's caseworker since March 2000. Fraelle stated Tashika does recognize respondent but considers respondent as her sister's mother. If respondent's parental rights were terminated, Fraelle would allow visits between Tashika and her grandmother and sister to continue.
Respondent presented the testimony of her mother, Vivian Goodman. Goodman testified she had monthly visits with Tashika. Tashika did recognize respondent but considered whoever she was living with as her mother. Goodman testified she was interested in adopting Tashika.
Respondent testified she has two other children, ages two and seven, living with her. The older child gets along well with Tashika. The younger child has only met Tashika once but asks about Tashika. Respondent indicated she wanted Tashika back home with her and could meet her special needs.
In closing arguments, the guardian ad litem asserted it was not in Tashika's best interest to have respondent's rights terminated. The trial court found it was in Tashika's best interest that respondent's parental rights be terminated. This appeal followed.
 II. ANALYSIS A. Motion To Continue
Respondent first argues the trial court erred in denying her motion to continue her fitness hearing.
Section 2-1007 of the Code of Civil Procedure (735 ILCS 5/2-1007 (West 2000)) addresses requests for continuances. That section provides, in pertinent part, as follows: *Page 169 
 "On good cause shown, in the discretion of the court and on just terms, additional time may be granted for the doing of any act or the taking of any step or proceeding prior to judgment." 735 ILCS 5/2-1007
(West 2000).
Under Illinois law, a party has no absolute right to a continuance. A trial court's decision to deny a continuance will not be reversed absent an abuse of discretion. In re M.R., 305 Ill. App. 3d 1083, 1086,713 N.E.2d 1241, 1242 (1999). Additionally, the denial of a request for continuance will not be grounds for reversal unless the complaining party has been prejudiced by such denial. In re D.P., 327 Ill. App. 3d 153,158, 763 N.E.2d 351, 355 (2001).
Here, the record indicates respondent was present in court on May 2, 2001, when the August 16, 2001, hearing date was set. According to respondent's attorney, an appointment was established to go over the case, but respondent failed to appear. Respondent had over three months to meet with her attorney but did not. Respondent had a history of failing to appear at court dates. Additionally, respondent has not demonstrated how she was prejudiced by the trial court's denial of her motion.
Accordingly, we find the trial court did not abuse its discretion in denying the motion to continue.
 B. Tashika's Best Interest
At the best interest hearing, respondent and the guardian ad litem
argued respondent's parental rights should not be terminated because the probability Tashika would not be adopted was great. Respondent also raises the same argument on appeal.
In its order, the trial court quoted the following language from section 2-29(4) of the Juvenile Court Act of 1987 (Juvenile Court Act):
 "A finding of the unfitness of a parent must be made in compliance with the Adoption Act, without regard to the likelihood that the child will be placed for adoption, and be based upon clear and convincing evidence." 705 ILCS 405/2-29(4) (West 2000).
The court then concluded "[t]hat although this statutory guideline is made in reference to unfitness[,] the [c]ourt believes it also applies to the best interest hearing." Respondent asserts that conclusion was erroneous. We agree.
In proceedings to terminate parental rights, the trial court first determines whether the parent is unfit. In re M.F.,326 Ill. App. 3d 1110, 1116, 762 N.E.2d 701, 707 (2002). In deciding a parent's fitness, the court focuses on whether the parent's conduct
falls within one or more of the several "grounds of unfitness" described in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2000)). In reD.D., *Page 170 196 Ill. 2d 405, 417, 752 N.E.2d 1112, 1119 (2001). As stated, the trial court must determine unfitness "without regard to the likelihood that the child will be placed for adoption." 705 ILCS 405/2-29(4) (West 2000). Once parental unfitness has been found in a proceeding to terminate parental rights, the parent's rights must yield to the child's best interest. M.F., 326 Ill. App. 3d at 1115, 762 N.E.2d at 706. A court determines the child's best interest at a separate hearing to ensure the proper focus is on the child's interests. In re A.P.,277 Ill. App. 3d 592, 600, 660 N.E.2d 1006, 1012 (1996). Accordingly, the two determinations have different foci.
Because the best interest determination focuses on what is in thechild's best interest, the child's likelihood of adoption is an appropriate factor for the trial court's consideration. In many cases, this court has determined a trial court's finding as to the child's best interest was not against the manifest weight of the evidence for several reasons, including that an adoptive home was available. See M.F.,326 Ill. App. 3d at 1117, 762 N.E.2d at 707; In re S.B.,316 Ill. App. 3d 669, 675, 736 N.E.2d 1164, 1169 (2000); In re D.S.,313 Ill. App. 3d 1020, 1030, 730 N.E.2d 637, 645 (2000); In reM.M.J., 313 Ill. App. 3d 352, 355, 728 N.E.2d 1237, 1240 (2000). Additionally, while no statutory provision states the likelihood of adoption may be considered at a best interest hearing, section 2-28(2) of the Juvenile Court Act states a trial court shall set a permanency goal that is in the child's best interest, considering several factors, including the "[c]urrent placement of the child and the intent of thefamily regarding adoption." (Emphasis added.) 705 ILCS 405/2-28(2)(3) (West 2000).
While we find a child's likelihood of adoption may be considered at a best interest hearing, we note it is merely one factor to consider, and a child's slim chance of adoption does not per se require a finding that termination of parental rights is not in the child's best interest. Thus, we consider whether the trial court's decision is contrary to the manifest weight of the evidence. See M.F., 326 Ill. App. 3d at 1115-16,762 N.E.2d at 706.
Here, Tashika had been in the custody of DCFS and a ward of the court for more than seven years at the time of the best interest hearing. She is a child with very special needs, and the evidence indicated respondent had not been able to meet those needs. While Tashika had a close relationship with her grandmother and sister, the evidence indicated Tashika could still visit with them even if respondent's parental rights were terminated. Although the likelihood of adoption was slim, so was the likelihood respondent could care for Tashika.
Because the evidence demonstrated it was highly unlikely respondent would ever be able to parent Tashika, a possibility of adoption *Page 171 
was Tashika's best hope for permanency. Accordingly, the trial court's decision was not against the manifest weight of the evidence.
Additionally, we note that, while the trial court concluded the likelihood of adoption should not be considered in a best interest hearing, the court also stated there are "angels" who are willing to adopt medically complex children, and Tashika should be given the opportunity to be adopted by one. Thus, we are not convinced the trial court did not in fact consider the likelihood of adoption in finding termination was in Tashika's best interest.
 III. CONCLUSION
For the reasons stated, we affirm the trial court's judgment.
Affirmed.
MYERSCOUGH and STEIGMANN, JJ., concur.