NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 240957-U

NOS. 4-24-0957, 4-24-0958 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 26, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* Ai. H., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Sangamon County |
|    Petitioner-Appellee, | ) | No. 19JA159 |
|    v.   (No. 4-24-0957) | ) | |
| Nathan H., | ) | |
|    Respondent-Appellant). | ) | |
| -------------------------------------------------------------------- | ) | |
| *In re* A.H., a Minor | ) | No. 19JA160 |
| | ) | |
| (The People of the State of Illinois, | ) | |
|    Petitioner-Appellee, | ) | |
|    v.   (No. 4-24-0958) | ) | Honorable |
| Nathan H., | ) | Karen S. Tharp, |
|    Respondent-Appellant). | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Doherty and Lannerd concurred in the judgment.

**ORDER**

¶ 1  *Held*: The appellate court affirmed the trial court's judgments terminating respondent's parental rights to his daughters, concluding (1) the court's unfitness and best-interest findings were not against the manifest weight of the evidence and (2) respondent had not established any error related to the alleged exclusion of evidence relevant to his fitness.

¶ 2  Respondent father, Nathan H., appeals the trial court's judgments terminating his parental rights to his daughters, Ai. H. (born July 2012) and A.H. (born September 2013). In this consolidated appeal, respondent argues (1) the court's unfitness and best-interest findings are against the manifest weight of the evidence and (2) the court erred by excluding evidence relevant to his fitness. For the reasons that follow, we affirm the court's judgments.

¶ 3                                    I. BACKGROUND

¶ 4          Respondent and April P. are the minors' parents. April P.'s parental rights to the minors were terminated during the proceedings below pursuant to voluntary surrenders. She is not a party to this appeal.

¶ 5                        A. Motions to Terminate Parental Rights

¶ 6          In February 2024, the State filed motions to terminate respondent's parental rights to the minors. In the motions, the State alleged respondent was an unfit parent in that he (1) failed to maintain a reasonable degree of interest, concern, or responsibility as to the minors' welfare (750 ILCS 50/1(D)(b) (West 2022)); (2) failed to make reasonable efforts to correct the conditions which were the basis for the removal of the minors within certain nine-month periods following the minors' adjudications of neglected (*id.* § 1(D)(m)(i)), namely (a) October 30, 2019, to July 30, 2020, (b) July 30, 2020, to April 30, 2021, (c) April 30, 2021, to January 30, 2022, (d) January 30, 2022, to October 30, 2022, (e) October 30, 2022, to July 30, 2023, and (f) April 30, 2023, to January 30, 2024; and (3) failed to make reasonable progress toward the return of the minors to him within certain nine-month periods following the minors' adjudications of neglected (*id.* § 1(D)(m)(ii)), namely the same previously identified periods. The State further alleged it was in the minors' best interests to terminate respondent's parental rights and appoint the Illinois Department of Children and Family Services (DCFS) as guardian with the power to consent to adoption.

¶ 7                    B. Hearing on the Motions to Terminate Parental Rights

¶ 8          Over a two-day period in April and July 2024, the trial court held a hearing on the State's motions to terminate respondent's parental rights to the minors. During the fitness portion

of the hearing, the State presented testimony from (1) a caseworker who was assigned to the minors' cases from August 2019 to May 2020, (2) a caseworker who had been assigned to the minors' cases since May 2020, (3) a case supervisor who had been assigned to the minors' cases since October 2019, (4) a foster parent who cared for Ai. H. from October 2020 through February 2023 and A.H. from October 2020 through December 2023, and (5) a clinical psychologist who conducted psychological examinations of respondent and the minors and who was qualified as an expert. The State also presented an integrated assessment, 15 service plans, the clinical psychologist's curriculum vitae, and a report of the psychological evaluation of respondent. Respondent did not present any evidence. The following is gleaned from the evidence presented.

¶ 9        In August 2019, the minors were taken into DCFS care following an incident of domestic violence between the minors' mother and her paramour when the minors were present. The minors were initially placed in the care of a great aunt. They were adjudicated neglected on October 30, 2019, and later made wards of court. It was recommended the minors attend counseling because of the domestic violence in their home and the fear they had of their mother's paramour.

¶ 10        After the minors were taken into DCFS's care, respondent engaged with DCFS and completed an integrated assessment. The integrated assessment recommended respondent cooperate with DCFS, obtain and maintain suitable housing and employment, participate in parenting education classes, complete a substance abuse assessment, and attend visitations with the minors. The recommendations were incorporated into service plans.

¶ 11        In spring 2020, respondent was engaged in the recommended services. He completed parenting education classes and a substance abuse assessment, the latter of which did

not recommend treatment. He attended supervised visitations with the minors, which eventually transitioned to unsupervised weekend visits.

¶ 12    In June 2020, the minors, when Ai. H. was 8 years old and A.H. was 7 years old, were placed in the care of respondent. The assigned caseworker informed respondent not to allow the minors' mother to visit with the minors without DCFS's approval. The caseworker also informed respondent of the need for the minors to attend counseling.

¶ 13    In July 2020, the minors were removed from respondent's care due to a reported incident of domestic violence between respondent and a female while the minors were present. The report was determined to be unfounded, and the minors were returned to respondent's care later that month.

¶ 14    In October 2020, the minors were removed from respondent's care upon the discovery that respondent had allowed the minor's mother to be with the minors without DCFS's approval. It was also discovered the minors had been dropped from counseling due to poor attendance and lack of communication with respondent.

¶ 15    After the minors were removed from respondent's care, they were placed in the care of a nonrelative foster parent, where they remained through 2023. The minors began exhibiting concerning behaviors shortly after their removal from respondent's care. Ai. H. displayed high anxiety and concerns about her safety, and A.H. displayed fear of the bathroom and dark places. The minors also began reporting the alarming behavior of respondent shortly after their removal from his care. A.H. first reported seeing respondent physically abuse Ai. H. The report initiated an investigation, and the report was later determined to be unfounded.

¶ 16    In late 2020 through 2021, the minors began making reports of sexual abuse

committed against them by respondent and other male relatives while they were in respondent's care. The minors had increased behavioral issues, including instances of sexually acting out, physical aggression, urinating and defecating in inappropriate places, and seeking out online pornography, after these reports were made. The minors also expressed a fear of respondent and the male relatives, and they would exhibit increased behavioral issues if they saw the men. The minors' behaviors ultimately resulted in them being approved for a specialized level of foster care.

¶ 17        As a result of the abuse allegations against respondent, additional recommended services were added to his service plan, including counseling. Respondent initially engaged in counseling but was then unsuccessfully discharged in July 2021. He was exhibiting signs of paranoia, not making progress in counseling, focusing on others in the room, and making derogatory statements about the assigned caseworker. Respondent became uncooperative with DCFS and showed a lack of commitment to completing the recommended services. Respondent's behaviors resulted in a recommendation for a psychological evaluation, which respondent completed in February 2022.

¶ 18        The clinical psychologist concluded respondent met the criteria for a "mild" intellectual disability and had an IQ of 64, which was in the first percentile of his age group. She further diagnosed him with "cannabis use disorder, severe, trauma and stress related disorder, and parent/child relational problem." The psychologist opined respondent, who reported using marijuana twice daily for the past nine years, was self-medicating to deal with a childhood history of abuse and neglect and was without other coping skills.

¶ 19        As for the minors' involvement with DCFS, the clinical psychologist indicated respondent blamed DCFS, denied any wrongdoing or responsibility for the minors' behavioral

issues, and denied the minors were afraid of him and did not want to see him. She noted respondent did not convey "any real empathy" for the minors or concern for their mental health or behavioral issues, instead focusing on his alleged mistreatment by DCFS and his desire to have the minors returned to his care. As for his parenting skills, the psychologist noted respondent expressed a rigidity in his ideas of parenting and child development, indicating children should never disobey their parents, be quiet and polite, and be potty trained by one year of age. The psychologist expressed concern with respondent's abilities to understand and empathize with the minors.

¶ 20    The clinical psychologist recommended (1) no contact between respondent and the minors due to the ongoing abuse investigations and (2) respondent participate in substance abuse services and random drug screens.

¶ 21    Around April 2022, the assigned caseworker mailed respondent a copy of the report of the psychological examination and a letter setting forth additional service recommendations for respondent to complete. The services included (1) cooperating with DCFS, (2) completing a substance abuse assessment, (3) completing trauma-informed parenting education classes, and (4) engaging in counseling. Additional letters detailing the recommended services were also later mailed to respondent.

¶ 22    In October 2022, the clinical psychologist conducted psychological examinations of the minors. She indicated the minors were specific, detailed, and consistent in expressing their fear of respondent and the sexual abuse committed by him and by the other male relatives while they were in respondent's care. She found the minors to be "extremely credible" in their accounts and noted they had been exhibiting sexualized behaviors consistent with having experienced sexual abuse. The psychologist described the minors as "extremely traumatized children" with

"severe" behavioral issues who needed strict supervision.

¶ 23    Also in October 2022, the assigned caseworker approached respondent following a court hearing to discuss the additional service recommendations. Respondent indicated to the caseworker that he would not be completing any additional services.

¶ 24    In February 2023, respondent stated during an administrative case review he would not be completing any additional services because he already completed the recommended services and did not believe he needed any more services. Respondent stated the same at a June 2023 meeting. As of the second day of the hearing on the State's motions to terminate respondent's parental rights to the minors, there was no indication respondent had engaged in any of the additional recommended parenting, substance abuse, or counseling services. Additionally, respondent had not made any inquiry with the caseworker or the case supervisor about the well-being of the minors since at least October 2022. He did, however, appear in court for at least three hearings concerning visitations with the minors.

¶ 25    Following the DCFS investigations, the reports of sexual abuse against the minors by respondent and by the male relatives were determined to be unfounded. A report of sexual abuse against the minors by an unknown person was determined to be indicated. The minors continued to express a fear of respondent and a desire not to be returned to his care.

¶ 26    The minors' foster parent ultimately determined she did not have the capabilities to adequately parent the minors due to their behavioral issues. The foster parent made this determination only after quitting her job to provide the minors with the care she believed they needed. Both minors eventually required hospitalization and residential treatment.

¶ 27    Based on this information, the trial court found respondent was an unfit parent for

all the reasons alleged in the State's motions to terminate parental rights, except for the allegations of lack of reasonable efforts and progress for the period of October 30, 2019, to July 30, 2020, which it found the State had not proven.

¶ 28       The trial court proceeded with the best-interest portion of the hearing immediately following the conclusion of the fitness portion of the hearing. The court took judicial notice of the evidence presented during the fitness portion of the hearing. The State presented testimony from the case supervisor. The State also presented reports of the psychological evaluations of the minors. Respondent did not present any evidence. The following is gleaned from the evidence presented.

¶ 29       The minors, who were 12 and 11 years old at the time of the best-interest portion of the hearing, were in residential treatment facilities. Both required specialized care and were receiving counseling and medical treatment. They continued to have behavioral issues, including suicidal ideations, and required extensive supervision. Due to their needs, the minors would require a specialized foster home with a foster parent who has specialized training in caring for children with severe trauma. The minors continued a sibling relationship, and they could be placed together.

¶ 30       The minors' last visitation with respondent occurred in April 2021. The minors were afraid of respondent and did not want to be returned to him. The case supervisor testified the minors expressed "they don't understand why this happened to them and that he's getting to walk around freely while they're locked upon in psychiatric institutions." There was no known bond between the minors and respondent. The case supervisor believed respondent could not provide the required specialized care for the minors, given his lack of engagement in services and his lack of expressed concern about their well-being.

¶ 31 Based on this information, the trial court, after considering the statutory best-interest factors, found it would be in the minors' best interests to terminate respondent's parental rights. The court entered judgments terminating respondent's parental rights to each of the minors.

¶ 32 This consolidated appeal followed.

¶ 33 II. ANALYSIS

¶ 34 On appeal, respondent argues (1) the trial court's unfitness and best-interest findings are against the manifest weight of the evidence and (2) the court erred by excluding evidence relevant to his fitness. The State disagrees.

¶ 35 A. Unfitness Finding

¶ 36 Respondent argues the trial court's finding he was an unfit parent is against the manifest weight of the evidence. In support of his argument, respondent asserts (1) the court erroneously "relied on expert testimony that was speculative and incomplete," in that the "recommendations were made prior to directly assessing the children," (2) "testimony from multiple witnesses confirmed that [he] had complied with the court's orders and made efforts toward improving his parenting skills," and (3) his "intellectual challenges and cannabis use do not, on their own, justify a finding of unfitness."

¶ 37 In a proceeding to terminate parental rights, the State must prove parental unfitness by clear and convincing evidence. *In re N.G.*, 2018 IL 121939, ¶ 28, 115 N.E.3d 102. A trial court's finding of parental unfitness will not be disturbed on appeal unless it is against the manifest weight of the evidence. *Id.* ¶ 29. A finding is against the manifest weight of the evidence "only where the opposite conclusion is clearly apparent." *Id.*

¶ 38        The trial court found respondent was an unfit parent as defined in section 1(D)(b) of the Adoption Act (750 ILCS 50/1(D)(b) (West 2022)). Section 1(D)(b) states a parent will be considered an "unfit person" if he or she fails "to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare." *Id.* In determining whether a parent showed a reasonable degree of interest, concern, or responsibility as to a child's welfare, the court must examine "the parent's conduct concerning the child in the context of the circumstances in which that conduct occurred." *In re Adoption of Syck*, 138 Ill. 2d 255, 278, 562 N.E.2d 174, 185 (1990). "Noncompliance with an imposed service plan *** is sufficient" for a finding a parent is unfit for failing to maintain a reasonable degree of interest, concern, or responsibility as to the minor's welfare. *In re A.F.*, 2012 IL App (2d) 111079, ¶ 41, 969 N.E.2d 877.

¶ 39        In this case, the evidence presented during the fitness portion of the hearing on the State's motions to terminate respondent's parental rights demonstrated respondent needed to engage in recommended services for any possibility of the minors being returned to his care. While respondent initially engaged in the recommend services in 2020, that engagement diminished in 2021 and then ultimately halted in 2022. Additionally, the evidence showed, regardless of the cause of the minors' behavioral issues, respondent demonstrated no empathy toward the minors' struggles and had not inquired with the caseworker or case supervisor about the minors' well-being since at least October 2022. Based on this evidence, we find the trial court's unfitness finding based on respondent's failure to maintain a reasonable degree of interest, concern, or responsibility as to the minors' welfare is not against the manifest weight of the evidence.

¶ 40        In so finding, we have considered the assertions of respondent in support of his argument on appeal and found them to be unpersuasive. First, respondent challenges the credibility

of the clinical psychologist on the basis she reached her recommendations prior to assessing the minors. The credibility of the psychologist, however, was a determination that the trial court was in the best position to make (see *In re Dar. H.*, 2023 IL App (4th) 230509, ¶ 54, 242 N.E.3d 416), and, moreover, it is unclear why respondent believes the psychologist could not make a recommendation after her assessment of respondent. The only case cited by respondent, *In re Tashika F.*, 333 Ill. App. 3d 165, 775 N.E.2d 304 (2002), provides us no assistance. Second, respondent emphasizes his efforts and progress shortly after the minors were taken into DCFS's care. Respondent efforts, however, diminished as time progressed and then ultimately halted, facts which respondent simply ignores. And last, respondent suggests his intellectual challenges and cannabis use cannot justify a finding of unfitness. The court did not, however, base its finding of unfitness on only respondent's intellectual challenges and cannabis use.

¶ 41　　　　　As only one ground for a finding of unfitness is necessary to uphold the trial court's judgments, we need not review the other grounds for the court's unfitness finding. *In re Z.M.*, 2019 IL App (3d) 180424, ¶ 70, 131 N.E.3d 1122.

¶ 42　　　　　　　　　　　　　B. Best-Interest Findings

¶ 43　　　　　Respondent argues the trial court's findings it was in the minors' best interests to terminate his parental rights are against the manifest weight of the evidence. In support of his argument, respondent asserts (1) "[w]itnesses testified that he made significant efforts to engage with his children and had complied with the court's recommendations," (2) the court erroneously relied on the minors' reported "fear stemming from interactions with [April P.'s paramour][ ] rather than [him]," and (3) "there was no direct evidence linking [him] to any harm against his children."

¶ 44    In a proceeding to terminate parental rights, the State must prove termination is in the child's best interests by a preponderance of the evidence. *In re D.T.*, 212 Ill. 2d 347, 367, 818 N.E.2d 1214, 1228 (2004). When considering whether termination of parental rights would be in a child's best interest, the trial court must consider several statutory factors within the context of the child's age and developmental needs. See 705 ILCS 405/1-3(4.05) (West 2022).

¶ 45    This court will not reverse a trial court's finding termination of parental rights is in a child's best interests unless it is against the manifest weight of the evidence. *In re J.B.*, 2019 IL App (4th) 190537, ¶ 33, 147 N.E.3d 953. Again, a finding is against the manifest weight of the evidence only where the opposite conclusion is clearly apparent. *Id.*

¶ 46    In this case, the evidence presented during the best-interest portion of the hearing on the State's motions to terminate respondent's parental rights demonstrated the minors required specialized care which respondent, who was refusing to engage in recommended services, could not provide. Additionally, the evidence showed the minors, who were 12 and 11 years old at the time, were afraid of respondent and did not want to be returned to him. Based on this evidence, we find the trial court's findings it was in the minors' best interests to terminate respondent's parental rights are not against the manifest weight of the evidence.

¶ 47    In so finding, we have considered the assertions of respondent in support of his argument on appeal and found them to be unpersuasive. First, as he did previously, respondent emphasizes his efforts and progress shortly after the minors were taken into DCFS's care. Again, however, respondent efforts diminished as time progressed and then ultimately halted. Second, respondent suggests the trial court erroneously relied upon the minors' fear of their mother's paramour in reaching its decision. The record, however, does not support respondent's suggestion.

And last, respondent emphasizes the fact the minors' reports against him were determined to be unfounded. Those determinations, however, do not render the court's best-interest findings against the manifest weight of the evidence.

¶ 48                                C. Evidentiary Ruling

¶ 49        Respondent argues the trial court erred by excluding evidence relevant to his fitness. Specifically, respondent asserts the court erroneously excluded "evidence related to the children's counseling and behavioral progress," which "could have cast doubt on the expert testimony regarding [his] fitness."

¶ 50        "It is well established that, on appeal, the party claiming error has the burden of showing any irregularities that would justify reversal." *In re Linda B.*, 2017 IL 119392, ¶ 43, 91 N.E.3d 813. Indeed, "[t]his court is not a depository in which the burden of argument and research may be dumped." *Holzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶ 80, 987 N.E.2d 1.

¶ 51        In this case, respondent does not identify the specific evidence which he believes the trial court erroneously excluded, nor does he explain how the evidence would have affected the unfitness finding. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (requiring appellate briefs to provide reasoned contentions with citation to supporting authority). In fact, respondent does not even cite the pages of the record where the purported evidence was allegedly excluded. See Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020) (requiring appellate briefs to contain sufficient references to the pages of the record relied upon). Accordingly, we conclude respondent has not established any error related to the alleged exclusion of evidence relevant to his fitness.

¶ 52                                III. CONCLUSION

¶ 53        For the reasons stated, we affirm the trial court's judgments.

¶ 54        Affirmed.