NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (4th) 250888-U

NOS. 4-25-0888, 4-25-0889 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 29, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* N.G. and A.R., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Tazewell County |
|       Petitioner-Appellee, | ) | Nos. 25JA21 |
|       v. | ) |     25JA22 |
| Abigail R., | ) | |
|       Respondent-Appellant). | ) | Honorable |
| | ) | Katherine G. P. Legge, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE HARRIS delivered the judgment of the court.
Justices Steigmann and Vancil concurred in the judgment.

**ORDER**

¶ 1     *Held*: The trial court committed no error in adjudicating respondent mother's children neglected and entering a dispositional order finding that respondent was unfit to care for the children and making them wards of the court.

¶ 2     Respondent, Abigail R., appeals following the trial court's adjudicatory and dispositional orders finding her children were neglected, she was unfit to care for them, and it was in the children's best interests to be made wards of the court. On appeal, respondent's appellate counsel has filed a motion to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967), asserting there are no meritorious issues for review. We grant appellate counsel's motion and affirm the court's judgment.

¶ 3                              I. BACKGROUND

¶ 4     Respondent is the mother of two children, N.G. (born in October 2014) and A.R.

(born in October 2007). In February 2025, an investigator with the Illinois Department of Children and Family Services (DCFS) filed petitions in Tazewell County case Nos. 25-JA-21 and 25-JA-22, alleging N.G. and A.R. were neglected minors under the Juvenile Court Act of 1987 (Act) (705 ILCS 405/1-1 *et seq.* (West 2024)) and it was in their bests interests to be made wards of the court and placed in shelter care.

¶ 5        Both petitions alleged a single count of neglect, specifically, that the minors' environment was injurious to their welfare (*id.* § 2-3(1)(b)) based on the following allegations. On January 14, 2025, the police found respondent driving under the influence of alcohol. At the time, respondent was also found in possession of raw cannabis that was in plain view in an unsealed container, "two cannabis hitter pipes," and multiple loose pills that were later "identified as Amphetamines/Dextroamphetamine." On January 17, 2025, DCFS received a hotline report that respondent called N.G.'s school to report that he "was absent from school due to illness," although N.G. was at school and stated that he had been driven there by respondent. On January 18, 2025, police officers responded to a report of an "intoxicated female" at an Arby's restaurant and found respondent sitting in a vehicle. She had heavily slurred speech, and officers noticed "the odor of [an] alcoholic beverage." Respondent was found with an open bottle of alcohol in her purse and several loose pills, most of which were later identified as Xanax. On January 23, 2025, respondent underwent "an oral tox drug screen" and tested positive for cocaine and benzodiazepines. On January 24, 2025, N.G.'s father, Thomas G., sent DCFS a photo of two vape pens and a small bottle of wine that N.G. had reportedly found in A.R.'s book bag. A.R. later denied that the items were hers and "stated that they might have been [respondent's]." On January 28, 2025, respondent missed an appointment for a random drug screen. The same day, Thomas reported that respondent had sent N.G. "disturbing text messages." He sent the DCFS investigator screenshots of the

messages, which included accusations that N.G. had lied and disparaging comments about Thomas.

¶ 6        The petitions further alleged that respondent had mental health issues for which she received treatment. Respondent reported taking Xanax for anxiety, amphetamines for attention-deficit/hyperactivity disorder (ADHD), and tramadol for chronic migraines. Finally, the petitions also alleged that respondent had both a prior conviction and a pending charge for driving under the influence.

¶ 7        In June 2025, the trial court conducted an adjudicatory hearing, during which respondent's counsel represented that respondent intended to "stipulate that the State could prove with a preponderance of evidence and not requiring strict proof the allegation in the neglect petition[s]." The record shows that the same day, respondent filed an amended answer to the petitions, asserting as follows:

> "Respondent neither admits nor denies the allegations of Count(s) I and stipulates that the Petition[s] can be proven by the preponderance of, or by clear and convincing evidence as presented by the State and does not demand strict proof."

(The record reflects A.R.'s putative father was deceased. N.G.'s father, Thomas, similarly stipulated with respect to some of the factual allegations in the petition seeking adjudication of wardship of N.G.) Respondent agreed with her counsel's representation and, upon inquiry by the court, asserted that she had "plenty of time" to talk with her counsel about her stipulation, was "thinking clearly," was not under the influence of drugs, alcohol, or prescription medication, was sober, and was in good physical health.

¶ 8        Respondent further stated that she considered herself to be in good mental health, although she had "been better." She informed the trial court that she had been diagnosed with

ADHD, generalized anxiety disorder, and a depressive disorder and that she "probably" should be taking prescription medication for those conditions. After the court clarified that it was trying to determine whether respondent was of sound mind to make decisions, respondent stated she believed she was "clear headed" and "of okay mindset." The court further questioned respondent's counsel regarding whether he had any concerns about respondent's mental health. Counsel stated as follows:

> "I do have concerns, but in speaking with her today, she I think understood my questions, was responsive to my questions. At one point I had to kind of redirect her and focus her on several issues before us and she followed and so, in my opinion, I think she does have the mental capacity today to answer the Court's questions and make this decision that she and I made together."

¶ 9    After respondent indicated that she had not been forced or threatened into entering a stipulation, no promises had been made to her, and her decision was made freely and voluntarily, the State presented its factual basis. Specifically, it named the various witnesses who would testify to the neglect allegations set forth in the petitions. The trial court then accepted respondent's stipulation, finding it was made knowingly, voluntarily, and understandingly and supported by a factual basis. It further concluded that the State had met its burden of proving that each minor was neglected "by way of injurious environment." The same day, the court entered an adjudicatory order, finding N.G. and A.R. were neglected and setting the matter for a dispositional hearing.

¶ 10    In July 2025, respondent's retained counsel filed a motion to withdraw, asserting respondent had "been uncooperative with [him]." Following a hearing, the trial court granted the motion and appointed a new attorney to represent respondent.

¶ 11    In August 2025, the trial court conducted the dispositional hearing. Respondent's

- 4 -

new attorney was present for the hearing, but respondent "fail[ed] to appear." At the outset of the hearing, the court stated that it had received and reviewed the dispositional report dated July 18, 2025. According to the report, N.G. had resided with Thomas since January 2025, while A.R. had most recently been living with a relative. The report described respondent as having "been uncooperative or unavailable to DCFS since case opening." It stated that, as a result, respondent had not participated in an integrated assessment or been referred for services. Due to respondent's "lack of cooperation and contact," DCFS had also been unable to facilitate visitation between respondent and either minor. The report set forth the efforts that were made to contact and communicate with respondent. However, as of the date of the report, her whereabouts were unknown.

¶ 12    The report further showed that respondent had been arrested four times while the minors' cases were pending. On February 21, 2025, she was arrested and charged with criminal damage to property and residential burglary after she broke into Thomas's home and destroyed some of N.G.'s belongings. Following that incident, an order of protection was entered, preventing respondent "from being near [N.G.] and Thomas." On February 26, 2025, respondent was arrested and charged with two counts of possession of a controlled substance. Finally, she was also arrested on June 10 and 12, 2025. Both times, she was charged with assault and disorderly conduct.

¶ 13    At the hearing, the State offered no other evidence. Thomas's counsel called the minors' caseworker, Jordan Bradford, who testified that N.G. was engaged in individual therapy. Thomas reported that he was engaged in counseling and, according to Bradford, he had no other recommended services. On questioning by respondent's counsel, Bradford testified that he had "not been able to make contact" with respondent since the date of the dispositional report. Respondent's counsel also represented to the trial court that he had tried to call respondent but had

not "heard back from her."

¶ 14 The trial court determined it was in N.G.'s and A.R.'s best interests to be made wards of the court. It found respondent was unfit to care for the minors, noting, in part, that she had not "engaged in the process whatsoever" and that she was "not currently availing herself of any of the services to help her address the concerns of why the case came into care." The court placed custody and guardianship of N.G. with Thomas and of A.R. with DCFS. It entered its written dispositional order the same day as the hearing.

¶ 15 These appeals followed and were consolidated for purposes of review.

¶ 16                                    II. ANALYSIS

¶ 17 As stated, on appeal, respondent's attorney has filed a motion to withdraw as appellate counsel. See *In re S.M.*, 314 Ill. App. 3d 682, 685 (2000) (stating that the procedure for the withdrawal of appellate counsel as outlined in *Anders* applies in juvenile abuse and neglect cases). To his motion, counsel attached a brief in support, asserting that respondent's case presents "no appealable issue." Specifically, he contends the record reflects no error by the trial court in (1) accepting respondent's stipulation that the State could meet its burden of proving the neglect allegations and (2) proceeding with the dispositional hearing after respondent failed to appear. Service of the motion on respondent has been shown. Additionally, this court granted respondent leave to file a response to counsel's motion to withdraw on or before November 12, 2025, but she has not responded. Following a review of the record, we agree with appellate counsel and find respondent's appeal presents no meritorious issues for review.

¶ 18 The Act sets forth a two-step process for determining whether a minor should be made a ward of the court. *In re Z.L.*, 2021 IL 126931, ¶ 58. "Step one is the adjudicatory hearing on the petition for adjudication of wardship," at which the trial court must " 'first consider only

- 6 -

the question whether the minor is abused, neglected or dependent.' " *Id.* ¶ 59 (quoting 705 ILCS 405/2-18(1) (West 2018)). A neglected minor includes any child under the age of 18 whose environment is injurious to his or her welfare. 705 ILCS 405/2-3(1)(b) (West 2024).

¶ 19 "The State has the burden to prove allegations of abuse or neglect by a preponderance of the evidence." *Z.L.*, 2021 IL 126931, ¶ 61. On review, the trial court's finding of neglect will not be disturbed unless it is against the manifest weight of the evidence. *Id.* "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident." *Id.*

¶ 20 "If the trial court determines that a minor is abused or neglected at the adjudicatory hearing, the court then moves to step two, which is the dispositional hearing." *Id.* ¶ 60. At the dispositional hearing, the court determines whether it is in the "best interests of the minor and the public that the minor be made a ward of the court," as well as the proper disposition that best serves "the health, safety[,] and interests of the minor and the public." 705 ILCS 405/2-22(1) (West 2024). Under the Act, the court may place a minor outside of a parent's care after determining that the parent is "unfit or *** unable, for some reason other than financial circumstances alone, to care for, protect, train or discipline the minor *** and that the health, safety, and best interest of the minor will be jeopardized if the minor remains in the custody of" his or her parent. *Id.* § 2-27(1). On review, we will reverse the court's dispositional decision "only if the findings of fact are against the manifest weight of the evidence or the court committed an abuse of discretion by selecting an inappropriate dispositional order." *In re J.W.*, 386 Ill. App. 3d 847, 856 (2008).

¶ 21                                    A. Neglect Finding

¶ 22 As noted, respondent's appellate counsel first identifies as a potential issue for review the propriety of the trial court's acceptance of respondent's stipulation at the adjudicatory

- 7 -

hearing that the State could meet its burden of proving the neglect allegations. Counsel points out that at the time of respondent's stipulation, both respondent and her attorney expressed concerns about her mental health, which counsel suggests could raise a question regarding whether respondent was competent to enter into a stipulation or make an admission. Counsel argues, however, that nothing in the record at the time of the hearing supports a finding that respondent was incompetent. He contends the issues raised at the hearing regarding respondent's mental health were insufficient to raise a *bona fide* doubt as to her fitness and the record otherwise showed she understood her stipulation and appropriately participated in the proceedings. We agree.

¶ 23    Admissions under the Act must be voluntarily and intelligently made. *In re M.H.*, 196 Ill. 2d 356, 366 (2001). "[I]t must be apparent from the record that the party making the admission was aware of the consequences of his admission." *In re Johnson*, 102 Ill. App. 3d 1005, 1012 (1981).

> "Thus, for the admission of a parent to be valid in the adjudicatory phase of a neglect proceeding, it must be apparent from the record that the parent making the admission understood the consequences of his admission[—]that a finding of neglect gives the court jurisdiction of the minor who then becomes subject to the dispositional powers of the court." *Id.* at 1012-13.

¶ 24    Additionally, regarding the issue of competency or fitness to enter into a stipulation or make an admission, appellate counsel relies on cases that discuss a criminal defendant's fitness to stand trial or plead guilty. Counsel contends the relevant inquiry when determining whether a party is competent to participate in a legal proceeding is whether he or she can understand the proceedings and cooperate with counsel, not whether she suffered from any mental health issue. See *People v. Harris*, 206 Ill. 2d 293, 305 (2002) (finding that a defendant's allegations that he

suffered from mental impairments did not necessarily establish that he was unfit and the issue, instead, was whether the defendant "could understand the proceedings and cooperate with counsel"); *People v. Easley*, 192 Ill. 2d 307, 323 (2000) (The issue when determining fitness for trial "is not mental illness, but whether [the] defendant could understand the proceedings against him and cooperate with counsel in his defense.").

¶ 25        Here, respondent stipulated that the State could meet its burden of proving the neglect allegations, *i.e.*, that the minors' environment was injurious to their welfare based on the specific facts alleged in the petitions seeking adjudication of wardship. At the time of her stipulation, which was effectively an admission to the neglect allegations, respondent was represented by counsel and asserted that she had "plenty of time" to talk with her attorney about her stipulation. Although respondent commented that her mental health had "been better" and that she "probably" should be taking medication for ADHD, generalized anxiety disorder, and a depressive disorder, she also asserted that she believed her mental health was good and that she was "thinking clearly." Her counsel similarly stated his belief that respondent had "the mental capacity" to participate in the underlying proceedings. He noted that respondent had been responsive to his questions when they communicated.

¶ 26        Thus, while the record indicates respondent had some mental health diagnoses or issues, nothing in the record shows that she lacked the ability to understand the adjudicatory proceedings or cooperate with her counsel. Accordingly, we agree with respondent's appellate counsel that respondent can raise no meritorious claim that she was not competent or fit to enter into her stipulation at the adjudicatory hearing.

¶ 27        We find the record also reflects that respondent's stipulation was voluntarily and intelligently made. Upon inquiry by the trial court at the adjudicatory hearing, respondent

represented that she had not been forced or threatened into stipulating that the State could meet its burden of proof regarding the neglect allegations. She also maintained that no promises had been made to her and that her decision to stipulate was being made freely and voluntarily. Additionally, although the record does not show respondent was explicitly admonished regarding the consequences of her stipulation at the adjudicatory hearing, case law suggests explicit admonishments at the time of an admission are not required so long as the record supports a finding that a parent was otherwise previously informed of the consequences of a neglect finding. See *In re A.L.*, 2012 IL App (2d) 110992, ¶ 31 (finding an admission was knowing and voluntary where a parent was "admonished at the onset of the [neglect] proceedings" and represented by counsel at the time "she stipulated to an allegation of neglect"); *In re T.C.*, 2021 IL App (2d) 200691, ¶ 16 (holding an admission was knowing and voluntary where the respondent father was represented by counsel throughout the proceedings and an order that established him as the minor's father stated he had been advised of his rights and responsibilities and waived a hearing); *In re April C.*, 326 Ill. App. 3d 225, 243-44 (2001) (finding no error in the acceptance of an admission where the trial court advised the respondent "as to the nature of a stipulation and of the fact that its decision would be based upon it," the petitions "advised [the] respondent of the nature of the proceedings," the respondent "was represented by counsel at all relevant times" and did not complain of ineffective assistance, and the respondent made no effort to withdraw or object to her stipulation after its entry).

¶ 28        Here, as noted, respondent was represented by counsel throughout the underlying proceedings. She maintained that she had sufficient time to speak with her attorney about her stipulation. Respondent's counsel similarly indicated that he had advised respondent regarding her decision to enter into a stipulation. The record also shows that the petitions at issue advised

respondent of the nature of the proceedings in that they asked the trial court to adjudicate the minors wards of the court and place them in shelter care. The same day the petitions were filed, the court entered a temporary custody order, stating that respondent had been present before the court and "advised of the nature of the proceedings as well as [her] rights." The order itself also advised respondent that a lack of cooperation in the proceeding could result in the termination of her parental rights. After respondent's retained counsel entered his appearance in the case, the court entered an "Arraignment Order," stating respondent had appeared in court and been advised of the nature of the allegations, her rights, and possible dispositions. Finally, respondent never challenged or sought to withdraw her stipulation after it was entered.

¶ 29        Given these circumstances, we find the record supports a finding that respondent was aware of the nature and consequences of her stipulation and that it was both voluntarily and intelligently made. Accordingly, the record reflects no error in the trial court's acceptance of her stipulation at the adjudicatory hearing.

¶ 30                        B. Dispositional Hearing and Order

¶ 31        On review, appellate counsel also identifies as a potential issue for review whether "the matter should have been continued due to [respondent's] failure to be present at the dispositional hearing." He contends, however, that the record reflects no abuse of discretion by the trial court in failing to continue the matter because respondent did not move for a continuance and the record reflects no excuse for respondent's failure to appear.

¶ 32        "Under Illinois law, a party has no absolute right to a continuance." *In re Tashika F.*, 333 Ill. App. 3d 165, 169 (2002). The trial court's decision regarding whether to grant a continuance is reviewed for an abuse of discretion. *Id.* "Additionally, the denial of a request for continuance will not be grounds for reversal unless the complaining party has been prejudiced by

such denial." *Id.*

¶ 33　　　　Here, the record shows respondent failed to appear for the dispositional hearing and made no motion to continue that proceeding. Additionally, even had such a motion been made and denied, the record would reflect no abuse of discretion by the trial court or prejudice to respondent. Notably, the record contains no excuse for respondent's failure to appear at the hearing and, instead, supports a finding that respondent was not cooperating with DCFS or participating in the underlying proceedings. Her whereabouts at the time of the July 2025 dispositional report were unknown, and respondent had had no communication with the DCFS caseworker or her attorney between the date of the report and the date of the dispositional hearing in August 2025. Moreover, respondent's lack of cooperation and participation in the case supports the court's finding that she was unfit and the placement of the minors outside of her care was in their best interests.

¶ 34　　　　Under the circumstances presented, respondent cannot establish any error as a result of the dispositional hearing proceeding in her absence. The record also supports the trial court's dispositional findings and order. Accordingly, we agree with appellate counsel that respondent can raise no viable challenge to the dispositional proceedings on review.

¶ 35　　　　　　　　　　　　　III. CONCLUSION

¶ 36　　　　For the reasons stated, we grant appellate counsel's motion to withdraw and affirm the trial court's judgment.

¶ 37　　　　Affirmed.